UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

ANYELA SALAZAR, ANEL HERNANDEZ,   :
ROBERT EMMANUEL EMIILANO, and CAROLINA   :
PICHARDO,   :
       :
        Plaintiffs,   :
       :   **16 Civ. 7743 (VB)(JLC)**
    -against-   :
       :
203 LENA INC. d/b/a COCINA TALLER and DARIO   :
OLEAGA, individually,   :
       :
        Defendants.   :

----------------------------------------------------------------------- X

 

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR DEFAULT JUDGMENT**

 

PECHMAN LAW GROUP PLLC
Louis Pechman
Laura Rodriguez
488 Madison Avenue, 17th Floor
New York, New York 10022
(212) 583-9500
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 1

ARGUMENT ............................................................................................................................ 3

    I.    LEGAL STANDARD ......................................................................................................... 3

    II.    THE DISCRETIONARY FACTORS FAVOR A DEFAULT JUDGMENT ................................. 3

A.    Defendants' Default Was Willful ........................................................................ 4
B.    Defendants' Inaction Prejudices Plaintiffs ........................................................ 4
C.    Defendants Have Presented No Meritorious Defense ......................................... 5

    III.    THE AMENDED COMPLAINT ESTABLISHES DEFENDANTS' LIABILITY ...................... 5

A.    Defendants Are Subject to the FLSA and the NYLL ........................................ 6
B.    Minimum Wage and Overtime Wage Violations of the FLSA and NYLL .................... 9

    1.    Plaintiffs Were Not Compensated for all the Hours They Worked .................................... 9

C.    Defendants Did Not Pay Spread-of-Hours Wages ............................................ 14
D.    Applicable Statutes of Limitations .................................................................. 14
E.    Defendants Violated the Wage Theft Prevention Act ...................................... 15

    IV.    PLAINTIFFS ARE ENTITLED TO RECOVER DAMAGES ............................................. 16

A.    Unpaid Minimum Wage Calculation ................................................................ 16
B.    Unpaid Overtime Wages Calculation ............................................................... 17

    1.    There Was No Enforceable Agreement That Plaintiffs' Salaries Would Cover More than 40 Hours Each Week ........................................................**Error! Bookmark not defined.**

C.    Wage Theft Prevention Act Claims .................................................................. 18
D.    Liquidated Damages ........................................................................................ 19

    1.    Fair Labor Standards Act ................................................................................ 19
    2.    New York Labor Law ..................................................................................... 20

E.    Interest ............................................................................................................ 20
F.    Attorneys' Fees and Costs ............................................................................... 21

CONCLUSION ...................................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) ........................................................... 5

*Apolinar v. Global Deli & Grocery, Inc.*, No. 12 Civ. 3446, 2013 U.S. Dist. LEXIS 138137
(E.D.N.Y. Aug. 23, 2013) .................................................................................................. 7, 8, 16

*Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06 Civ. 14226, 2008 U.S. Dist. LEXIS
107062 (S.D.N.Y. Oct. 27, 2008) ......................................................................................... 5

*Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699
F.3d 230 (2d Cir. 2012) ........................................................................................................ 3

*Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048, 2007 U.S. Dist. LEXIS 33883 (S.D.N.Y. May
4, 2007) ................................................................................................................................ 20

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) ...................................................... 3

*Fermin v. Las Delicias Peruana Rest., Inc.*, 93 F. Supp. 3d 19 (E.D.N.Y. 2015) ................... 8, 21

*Flanagan v. N. Star Concrete Constr., Inc.*, No. 13 Civ. 2300, 2014 U.S. Dist. LEXIS 131632
(E.D.N.Y. Aug. 6, 2014) ...................................................................................................... 4

*Galicia v. 63-68 Diner Corp.*, No. 13 Civ. 3689, 2015 U.S. Dist. LEXIS 40599 (E.D.N.Y. Mar.
30, 2015) .............................................................................................................................. 6

*Gesualdi v. Dan Yant Inc.*, 6 F. Supp. 3d 264 (E.D.N.Y. 2014) ............................................ 5, 16

*Gilbert v. Hotline Delivery*, No. 00 Civ. 0160, 2001 U.S. Dist. LEXIS 9876
(S.D.N.Y. July 10, 2001) ...................................................................................................... 16

*Giles v. City of N.Y.*, 41 F. Supp. 2d 308 (S.D.N.Y. 1999) ......................................................... 13

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155 (2d Cir. 1992) ................. 5

*Jaramillo v. Banana King Rest. Corp.*, No. 12 CV 5649, 2014 U.S. Dist. LEXIS 91261
(E.D.N.Y. June 4, 2014) .................................................................................................. 15, 19

*Jiao v. Shi Ya Chen*, No. 03 Civ. 165, 2007 U.S. Dist. LEXIS 96480
(E.D.N.Y. Mar. 30, 2007) ..................................................................................................... 13

*Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131 (E.D.N.Y.2013) ............................................. 5

*Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *8
(E.D.N.Y. Jan. 20, 2010) ...................................................................................................... 21

*Leon v. Zita Chen*, No. 16 Civ. 480 (KAM) (PK), 2017 WL 1184149, at *9
(E.D.N.Y. Mar. 29, 2017) ................................................................................... 20

*Lora v. J.V. Car Wash, Ltd.*, No. 11 Civ. 9010, 2015 U.S. Dist. LEXIS 99444
(S.D.N.Y. July 24, 2015) ..................................................................................... 22

*Moon v. Kwon*, 248 F. Supp. 2d 201 (S.D.N.Y. 2002) ........................................ 15, 20

*Orient Overseas Container v. Crystal Cove Seafood*, No. 10 Civ. 3166 (PGG) (GWG),
2012 U.S. Dist. LEXIS 182821, at *29 (S.D.N.Y. Dec. 28, 2012) ........................... 23

*Pereira v. J. Sisters Hair Care Prods., Inc.*, No. 08 Civ. 4537, 2010 U.S. Dist. LEXIS 53137
(S.D.N.Y. Apr. 5, 2010) ....................................................................................... 20

*Reich v. S. New England Telecom Corp.*, 121 F.3d 58 (2d Cir. 1997) ......................... 5

*Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114 (E.D.N.Y. 2011) .............. 4

*Santillan v. Henao*, 822 F. Supp. 2d 284 (E.D.N.Y. 2011) ...................................... 21

*Swarna v. Al-Awadi*, 622 F.3d 123 (2d Cir. 2010) .................................................. 4

*Transatlantic Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105 (2d Cir. 1997) .......... 3

*Wicaksono v. XYZ 48 Corp.*, No. 10 Civ. 3635, 2011 U.S. Dist. LEXIS 55771
(S.D.N.Y. May 2, 2011) ....................................................................................... 14

*Yang v. ACBL Corp.*, 427 F. Supp. 2d 327 (S.D.N.Y. 2005) ................................ 14, 19

**Statutes**

29 U.S.C. § 207 ....................................................................................... *passim*

29 U.S.C. § 216(b) .............................................................................. 19, 20, 21

N.Y. Lab. L. § 195 ................................................................................. *passim*

N.Y. Lab. L. § 652 ............................................................................... 6, 14, 17

N.Y. Lab. L. § 663 ............................................................................. 15, 20, 21

**Other Authorities**

Federal Rule of Civil Procedure 55 ................................................................ 3

N.Y. C.P.L.R. § 5001(a) ............................................................................. 20

N.Y. C.P.L.R. § 5004 ................................................................................................................... 21

**Rules**

12 N.Y.C.R.R. §§ 142-2.1, 142-2.2 .......................................................................................... 9, 13

12 N.Y.C.R.R. § 146……………………………………………………………………….*passim*

## PRELIMINARY STATEMENT

On October 4, 2016, Plaintiffs Anyela Salazar, Anel Hernandez, Robert Enmanuel Emiliano, and Carolina Pichardo  (collectively, "Plaintiffs") initiated this Action (the "Action") against Defendants 203 Lena Inc. d/b/a Cocina Taller ("Cocina Taller"), and Dario Oleaga ("Oleaga") (collectively, "Defendants"), pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), the New York Labor Law ("NYLL"), and the Wage Theft Prevention Act ("WTPA"), seeking to recover unpaid minimum and overtime wages, spread-of-hours pay, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs.  Since Defendants' counsel withdrew from representation, and after Defendant 203 Lena Inc.'s bankruptcy petition was dismissed, Defendants failed to retain new counsel or otherwise appear to defend themselves in this action, as ordered by the Court.  As a result, the Court noted Defendants' default.  Because Plaintiffs have sufficiently stated claims under the FLSA and the NYLL in their Amended Complaint and submit sufficient proof of their damages in this Motion, Plaintiffs have established all prerequisites for, and now seek, a default judgment against the Defendants in the amount of $141,785.49[1] including attorneys' fees, costs, and pre-judgment interest.

## STATEMENT OF FACTS

Plaintiffs initiated this Action on October 4, 2016, and effected service of process upon Defendants on October 20, 2016.  *See* Docket No. 16-cv-07743, ECF Nos. 1, 11–13.  Thereafter, Plaintiffs filed an Amended Complaint on January 12, 2017.  *See* ECF No. 27; Ex. A to Pechman Aff.  Defendants filed an Answer on January 27, 2017.  *See* ECF No. 28.  Counsel to Defendants withdrew from this case on May 16, 2017, and the Court stayed this case shortly thereafter as a

---

[1] Plaintiffs' calculation of damages is attached as Exhibit H to the Affidavit of Louis Pechman ("Pechman Aff."). Exhibits to the Pechman Aff. are referenced hereafter by the prefix "Ex." and their corresponding letter.

result of Defendant 203 Lena Inc.'s petition for bankruptcy.  *See* ECF Nos. 35, 44.  Upon the dismissal of the bankruptcy case, the Court reopened this action and ordered defendant 203 Lena Inc. to engage legal representation stating that if 203 Lena Inc. failed to engage new counsel by June 17, 2019, or seek a reasonable extension of time in which to do so, that the Court may enter a default judgment against it. The Court's Order further stated that the individual defendants could engage counsel or proceed *pro se* but if they choose to proceed *pro se*, "by June 17, 2019, they must update the Court in writing as to their current addresses."  *See* ECF No. 60.  Defendants failed to retain new counsel and individual defendant Oleaga failed to update his address on the docket by June 17, 2019.  On July 10, 2019, the Court *sua sponte* extended to August 8, 2019 Defendants' time to complete such requirements and warned Defendants that if they "fail to comply with this Order or seek an extension of time to do so, the Court will direct plaintiffs to move for default judgment against all defendants."  ECF No. 63.  Defendants failed to retain new counsel by August 8, 2019 or seek a reasonable extension of time in which to do so.  *See* ECF No. 68.  Individual defendant Oleaga also failed to update his address on the docket in a timely manner. *Id*.

Upon Plaintiffs' August 9, 2019 Request for Certificate of Default (ECF No. 65, 66), the Clerk of Court entered Defendants' default on August 19, 2019.  See ECF No. 67.  On August 20, 2019, the Court ordered Plaintiffs to move by order to show cause for default judgment against Defendants by September 19, 2019.  ECF No. 68.  On September 13, 2019 Plaintiffs requested an extension of time to file the motion.  ECF No. 72.  The Court granted the motion extending the deadline to October 21, 2019 for Plaintiffs to move by order to show cause for default judgment against Defendants.  ECF No. 73.

**ARGUMENT**

**I.     Legal Standard**

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a court may enter a default judgment against a party whose default has been entered by the Clerk of the Court under Rule 55(a).  Despite the "oft-stated preference" for judging disputes on the merits, the trial court has "sound discretion" to grant or deny a motion for a default judgment.  *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).  In determining how to exercise that discretion, the court balances the need to expeditiously adjudicate cases, on the one hand, against its responsibility of giving litigants a chance to be heard.  *Id.* at 96.

The defaulting defendant is deemed to have admitted all of the well-pleaded factual allegations in the plaintiff's complaint, except for claims relating to damages.  *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).  To determine what damages should be awarded, the court may conduct an evidentiary hearing or rely upon the plaintiff's documentary submissions.  *See* Fed. R. Civ. P. 55(b)(2) ("The court may conduct hearings . . . when, to enter or effectuate a [default] judgment, it needs to . . . determine the amount of damages . . . ."); *Transatlantic Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) ("We have held that, under Rule 55(b)(2), 'it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment.'" (citation omitted)).

**II.    The Discretionary Factors Favor a Default Judgment**

To determine whether to grant a default judgment, the court considers a number of factors, including: (1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense.  *See*

*Swarna v. Al-Awadi*, 622 F.3d 123, 142 (2d Cir. 2010). Each of these factors weigh in favor of granting Plaintiffs a default judgment.

### A.    Defendants' Default Was Willful

Defendants' continued inaction to engage new counsel as a corporation and to update his address on the docket as an individual demonstrate that Defendants have no intention to defend themselves against Plaintiffs' claims in this Action. New counsel failed to appear for 203 Lena Inc. and individual defendant Oleaga failed to update his address on the docket even after the Court ordered Defendants to do so by June 17, 2019 and later extended the deadline *sua sponte* to August 8, 2019. *See* ECF No. 68.

Defendants have had more than sufficient time to defend this lawsuit by engaging new counsel, but have failed to do so. Defendants' inaction, despite receiving an extension from the Court, demonstrates Defendants' intent to abandon their defense against this Action. Accordingly, the Court should find that Defendants' default has been willful. *See Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 123 (E.D.N.Y. 2011) (finding that individual and corporate defendants' failure to obtain counsel by date ordered by the Court and defense counsel's withdrawal based on his clients' failure to communicate demonstrated a "willful and deliberate disregard for this Court's orders, which militates in favor of a default judgment"). *See also J&J Sports Prods. v. Tequilitas 2, Inc.*, 18-cv-2131 (BMC), 2019 U.S. Dist. LEXIS 30008, 2019 WL 919551 (E.D.N.Y. Feb. 25, 2019) (ordering an unopposed default judgment against defendants as new counsel for defendants failed to appear even after the Court's warnings).

### B.    Defendants' Inaction Prejudices Plaintiffs

Permitting this one-sided litigation to proceed would prejudice Plaintiff, "'as there are no additional steps available to secure relief in this Court.'" *Flanagan v. N. Star Concrete Constr.*,

*Inc.,* No. 13 Civ. 2300, 2014 U.S. Dist. LEXIS 131632, at *13–14 (E.D.N.Y. Aug. 6, 2014) (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC,* No. 06 Civ. 14226, 2008 U.S. Dist. LEXIS 107062, at *2 (S.D.N.Y. Oct. 27, 2008)), *report & recommendation adopted* Oct. 4, 2014; *see Joseph v. HDMJ Rest., Inc.,* 970 F. Supp. 2d 131, 148 (E.D.N.Y.2013) (same).   This factor therefore weighs in favor of granting the instant motion.

### C.      Defendants Have Presented No Meritorious Defense

Defendants have filed an Answer in this Action.   However, Defendants failed to provide meritorious defenses in the Answer and failed to raise affirmative and/or other defenses in the Answer or in a separate pleading or document in this Action.   *See* ECF No. 28, ¶ 40.   Given Defendants' default and failure to further pursue defending themselves in this lawsuit, Plaintiffs may establish their hours and pay through their own testimony.   *See Reich v. S. New England Telecom Corp.,* 121 F.3d 58, 69 (2d Cir. 1997) (noting that when an employer fails to keep accurate records, or keeps no records, a plaintiff's burden of proof as to hours and wages is satisfied by "sufficient evidence to show the amount and extent of his or her work as a matter of just and reasonable inference." (quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946)). There is no indication that Defendants intend to, or can, rebut such testimony.   Accordingly, this factor, in addition to the other factors, favors entry of a default judgment as a matter of discretion. As explained below, the allegations in the Amended Complaint establish a basis for finding liability and entering a default judgment against Defendants.

### III.   The Amended Complaint Establishes Defendants' Liability

Due to Defendants' default, the well-pleaded allegations pertaining to liability in the Amended Complaint must be accepted as true.   *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992)); *Gesualdi v. Dan Yant Inc.,* 6 F. Supp. 3d 264, 269

(E.D.N.Y. 2014).  Plaintiffs' Amended Complaint states claims for violations of the overtime wage provisions of the FLSA and NYLL, of the spread-of-hours provisions of the NYLL, and of the notice and wage statement provisions of the NYLL, as amended by the WTPA.

### A.    Defendants Are Subject to the FLSA and the NYLL

Both the FLSA and NYLL require employers to pay their employees a premium, 50 percent more than the employee's regular rate of pay, for hours worked over forty per workweek.  29 U.S.C. § 207; N.Y. Lab. L. § 652 (McKinney 2016); 12 N.Y.C.R.R. §§ 142–2.1, 142–2.2. Following the passage of the WTPA, the NYLL additionally requires employers to give employees written notice of, *inter alia*, their rates of pay and to furnish each employee with a wage statement with each wage payment.  N.Y. Lab. L. § 195(1), (3).

An employer is subject to the FLSA if it is an " enterprise engaged in commerce," meaning it:

> (1) "has employees engaged in commerce or in the production of goods for commerce," or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and (2) has annual gross volume of sales made or business done of not less than $500,000.

*Galicia v. 63–68 Diner Corp.*, No. 13 Civ. 3689, 2015 U.S. Dist. LEXIS 40599, at *5 (E.D.N.Y. Mar. 30, 2015) (quoting 29 U.S.C. § 203(s)(1)(A)).  Individuals may also be subject to the FLSA if they exercise "operational control" over the employee.  *Id*.  *See also Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013).  The NYLL is broader than the FLSA, and states that virtually anybody "acting as an employer," including "any individual . . . [or] corporation," is an employer of a plaintiff-employee.  *See, e.g.*, *Galicia*, 2015 U.S. Dist. LEXIS 40599, at *8–9 (citing N.Y. Lab. L. § 651(6)).

Plaintiffs, former servers at Cocina Taller, were not paid their wages at the statutory minimum wage rate.  Pechman Aff., ¶ 30.  Plaintiffs regularly worked over forty hours per workweek but received a fixed daily salary, arbitrary lump sum, or straight-time pay that did not include overtime pay.  Pechman Aff., ¶ 31.  Plaintiffs also did not receive one additional hour of pay at the statutory minimum hourly rate for each day that their workday exceeded ten hours.  Pechman Aff., ¶ 32.  Defendants failed to pay Plaintiffs at one and one-half (1 ½) times their regular hourly rate for all hours worked over forty in a workweek, furnish Plaintiffs with a wage notice at any time throughout their employment or provide them with wage statements at the end of each pay period through their employment. Pechman Aff., ¶ 33–34.  The Amended Complaint alleges that Cocina Taller is an enterprise "engaged in interstate commerce" within the meaning of the FLSA and "had an annual gross volume of sales in excess of $500,000.00."  Am. Compl., ¶¶ 16-18.  In the default judgment context, this is sufficient to prove liability.  *See, e.g.*, *Apolinar v. Global Deli & Grocery, Inc*., No. 12 Civ. 3446, 2013 U.S. Dist. LEXIS 138137, at *14 (E.D.N.Y. Aug. 23, 2013) ("[P]laintiff's allegation in the complaint that the defendants were engaged in interstate commerce was sufficient to establish this fact under the FLSA and NYLL in default judgment motion.").

The Amended Complaint also pleads sufficient facts showing that the individual defendant, Oleaga, exercised sufficient control over the Plaintiffs' terms and conditions of employment at Cocina Taller to be considered their employer.  "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages."  *Id*. at *8–9.

7

As alleged in the Amended Complaint, Oleaga:

- owned and managed Cocina Taller;

- disciplined, hired, and fired employees;

- set the wage rates of employees, including those of Plaintiffs';

- signed and distributed Plaintiffs' paychecks;

- established and implemented pay practices at Cocina Taller;

- retained time and wage records of employees;

- was regularly present and working at Cocina Taller; and

- regularly directed Cocina Taller employees, including Plaintiffs, in how to conduct their daily work duties.

See Am. Compl. ¶¶ 19–28.  See also Affidavit of Anel Hernandez (Hernandez Aff."), ¶¶ 4–10; Affidavit of Anyela Salazar ("Salazar Aff."), ¶¶ 4–9; Affidavit of Robert Emiliano ("Emiliano Aff."), ¶¶ 4–8; Affidavit of Carolina Pichardo (Pichardo Aff."), ¶¶ 4–9.

Dario Oleaga therefore exercised significant operational control over Cocina Taller, including regarding all aspects of the Plaintiffs' employment there, and accordingly is individually liable as an employer for any violations of the FLSA.  See Apolinar, 2013 U.S. Dist. LEXIS 138137, at *11 ("Taking into consideration the totality of the circumstances, and in the absence of any opposition from Defendants, under Irizzary, Defendant . . . was an 'employer' of Plaintiff[] under the FLSA.").  Oleaga also qualifies as the Plaintiffs' employer under the NYLL because he exercised sufficient control over Cocina Taller's operations throughout Plaintiffs' employment. See Fermin v. Las Delicias Peruanas Restaurant, Inc., 93 F. Supp. 3d 19, 34–35 (E.D.N.Y. 2015) (explaining that "Plaintiffs' burden in establishing that they are 'employees' entitled to NYLL protections is similar to the definition they had to satisfy under the FLSA" but the NYLL

8

"focuses more on 'the degree of control exercised by the purported employer' over the purported employee.'")

**B.     Minimum Wage and Overtime Wage Violations of the FLSA and NYLL**

**1.     Plaintiffs Were Not Compensated for all the Hours They Worked**

As alleged in the Amended Complaint, Defendants were Plaintiffs' employers within the meaning of the FLSA and NYLL. Am. Compl. ¶¶ 93, 100.  The FLSA requires employers to pay employees at least the federal minimum wage for every hour worked. 29 U.S.C. § 206.  Similarly, the NYLL ensures payment of a basic minimum wage rate.  12 N.Y.C.R.R. § 142-2.1.  As detailed in the Amended Complaint and stated in the supporting affidavits, Plaintiffs were not paid the minimum wage.  Furthermore, they were not paid for any of the overtime hours that they worked.

Plaintiff Salazar worked as a server according to the below schedule for Cocina Taller and was paid in the following manner by Cocina Taller:

- Work schedule, July 31, 2014 – June 10, 2016:
  - Friday and Saturday, from approximately 4:30 p.m. to 5:00 a.m. the next morning;
  - Sunday from approximately 10:30 a.m. to 7:00 p.m., or until approximately 3:00 a.m. the next morning three times per month;
  - Wednesday from approximately 4:30 p.m. to 12:00 a.m. the next morning, at least two times per month;
  - Salazar worked between 33.5 and 48 hours per week.

*See* Am. Compl. ¶¶ 29–34; Salazar Aff., ¶ 10–11.

- Pay rate, July 31, 2014 – June 10, 2016:
  - Defendants initially failed to pay Salazar any wages; she only received customer gratuities from the start of her employment through June 2015.

9

- o In or about June 2015 Defendants began paying Salazar at a fixed rate of $20.00 per workday, regardless of the number of hours she actually worked.

- o Starting in approximately October 2015, Defendants paid Salazar at a fixed rate of $40.00 per workday, regardless of the number of hours she actually worked.

- o Defendants failed to pay Salazar on a timely and regular basis, and instead paid her monthly or every few months.

*See* Am. Compl. ¶¶ 35–39; Salazar Aff. ¶¶ 12–15.

Plaintiff Hernandez worked as a server according to the below schedule for Cocina Taller and was paid in the following manner by Cocina Taller:

- Work schedule, July 2015 – on or about June 23, 2016:
  - o Sunday and Wednesday or Thursday from approximately 4:30 p.m. to 2:00 a.m. the next morning and Friday and Saturday from approximately 4:30 p.m. to 3:00 a.m. the next morning, totaling approximately 40 hours per week;
  - o At least 5 times per month Hernandez's work shifts would extend past the usual end time of 2:00 or 3:00 a.m. to approximately 4:30 a.m.

- Work schedule, June 24, 2016 – on or about October 31, 2016:
  - o Friday and Saturday from approximately 4:30 p.m. to 3:00 a.m. the next morning, and Sunday from approximately 4:30 p.m. to 2:00 a.m. the next morning, totaling approximately 30.5 hours per week.

- Work schedule, November 1, 2016 – on or about November 15, 2016, after the filing of the original Complaint:
  - o Two days per week from approximately 4:30 p.m. to 2:00 a.m. the next morning, totaling approximately 19 hours per week.

10

Am. Compl., ¶¶ 48–52; Hernandez Aff., ¶¶ 11–15.

- <u>Pay rate, July 2015 – approximately November 15, 2016:</u>

  o Defendants failed to pay Hernandez when he began his employment until his third week of work.

  o Defendants subsequently twice withheld payment of Hernandez's wages for ten weeks.

  o Defendants told Hernandez that he would be paid $7.50 per hour and gave him paystubs indicating an hourly rate of pay but, in fact, he was paid a fixed amount of $40.00 per day, regardless of the number of hours he actually worked.

  o Defendants deducted the cost of customer walk-outs from Hernandez's wages.  In all, the deductions totaled approximately $500.

Am. Compl., ¶¶ 53–59; Hernandez Aff., ¶¶ 18–20.

Plaintiff Emiliano worked as a server according to the below schedule for Cocina Taller and was paid in the following manner by Cocina Taller:

- <u>Work schedule, January 18, 2016 – on or about February 1, 2016:</u>

  o Three days per week from approximately 4:30 p.m. to 2:00 a.m. the next morning, totaling approximately 28.5 hours per week.

- <u>Work schedule, February 2, 2016 – March 29, 2016:</u>

  o Four days per week, on varying days, but always including Friday, Saturday, and Sunday, from approximately 4:30 p.m. to 2:00 a.m. the next morning, totaling approximately 38 hours per week.

  o During at least one week, Emiliano worked five days, totaling approximately 47.5 hours of work.

Am. Compl., ¶¶ 67–70; Emiliano Aff., ¶¶ 9–11.

- <u>Pay rate, January 18, 2016 – March 29, 2016:</u>

  o Defendants did not pay Emiliano any wages throughout his employment at Cocina Taller until March 29, 2016.

  o On March 29, 2016, Defendants furnished Emiliano a personal check of $1,122.54 and stated that it was payment for the hours he worked at Cocina Taller.

  o Defendants deducted the cost of customer a walk-out from Emiliano's wages totaling $100.

Am. Compl. ¶¶ 71–73; Emiliano Aff., ¶¶ 13–15.

Plaintiff Pichardo worked as a server according to the below schedule for Cocina Taller and was paid in the following manner by Cocina Taller:

- <u>Work schedule, March 19, 2016 – March 26, 2016:</u>

  o Two days per week from approximately 4:30 p.m. to 2:00 a.m. the next morning, totaling approximately 19 hours per week.

- Work schedule, March 27, 2016 – April 21, 2016:

  o Three days per week, on varying days, from approximately 4:30 p.m. to 2:00 a.m. or 3:00 a.m. the next morning, totaling approximately 30 hours per week.

Am. Compl., ¶¶ 81–73; Pichardo Aff., ¶¶ 10–12.

- <u>Pay rate, March 19, 2016 – April 21, 2016:</u>

  o Defendants furnished Pichardo with a check for $240.00 and stated that it was payment for the hours she worked at Cocina Taller.

Am. Compl., ¶ 84; Pichardo Aff., ¶ 13.

12

Defendants "suffered or permitted" the Plaintiffs to work the aforementioned schedules at Cocina Taller.  12 N.Y.C.R.R. §§ 142–2.14.  As employees of Defendants, the Plaintiffs were required to receive payment of at least the minimum wage for hours worked up to forty per week and payment at a rate of one and one-half times the basic minimum wage for hours worked over forty per workweek.  29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2.  However, as demonstrated in Plaintiffs' attached damages calculations Plaintiffs were all paid below the minimum wage while employed by Defendants.  *See* Ex. H to Pechman Aff.  Also, Plaintiffs Salazar, Hernandez, and Emiliano worked overtime hours which they were not compensated for.  Rather than pay the Plaintiffs by the hour, Defendants paid Plaintiffs either fixed daily salaries every workweek, at straight-time rates for all hours worked, or arbitrary lump sums, regardless of the number of hours they worked. Such payment was in violation of the FLSA and NYLL.  "There is a rebuttable presumption that an employer's payment of a weekly salary represents compensation for the first 40 hours of an employee's work-week; the burden is on the employer to rebut this presumption with evidence that the employer and employee had an agreement that the employee's weekly compensation would cover a different number of hours."  *Jiao v. Shi Ya Chen*, No. 03 Civ. 165, 2007 U.S. Dist. LEXIS 96480, at *45 (E.D.N.Y. Mar. 30, 2007) (citing *Giles v. City of N.Y.*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999)).  Because Defendants did not pay Plaintiffs an hourly wage at the statutory minimum wage rate and Defendants have not presented evidence of an agreement to the contrary, it is presumed that the salary paid to Plaintiffs did not account for and compensate their hours under forty worked per workweek at the statutorily-required 150 percent of their respective regular pay rate.  *See id.*  Furthermore, the New York State Hospitality Industry Wage Order ("Hospitality Wage Order") requires that workers in the hospitality industry, including Plaintiffs, be paid an hourly wage and presumes that a salary only covers the first forty hours that

an employee worked in a week.  *See* N.Y.C.R.R. § 146-3.5(b).  Based on the well-pleaded allegations presented by Plaintiffs, Plaintiffs have established that Defendants violated the overtime provisions of the FLSA and NYLL.  28 U.S.C. § 207(a)(1); N.Y. Lab. L. § 652; 12 N.Y.C.R.R. §§ 142–2.1, 142–2.2

### C.  Defendants Did Not Pay Spread-of-Hours Wages

The NYLL requires that employers pay employees one hour's pay at the full minimum wage for each workday that exceeds ten hours. 12 N.Y.C.R.R. §§ 146–1.6(a).  The Hospitality Wage Order provides that "on each day on which the spread of hours exceed 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate." 12 N.Y.C.R.R. § 146-1.6. Plaintiffs worked shifts that spanned more than ten hours during their employment. There is no evidence that Defendants paid Plaintiffs an additional hour when they required them to work more than ten hours in one day. Accordingly, Plaintiffs are entitled to spread-of-hours pay.

### D.  Applicable Statutes of Limitations

Claims under the FLSA are subject to a three-year statute of limitations if Defendants' actions were "willful."  29 U.S.C. § 255(a).  An employer acts willfully where it knows or shows reckless disregard for whether its actions are unlawful.  An employer need not act with malice or bad faith; rather, where an employer knew that failure to pay overtime was unlawful or did not take reasonable steps to learn about its obligation to pay overtime, its conduct is willful.  *Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 337–338, 340–41 (S.D.N.Y. 2005).

Where, as here, Defendants have defaulted, and the Amended Complaint alleges that Defendants acted intentionally, willfully, and in bad faith (*see* Am. Compl. ¶¶ 96–97, 107–108), Plaintiffs are entitled to finding that Defendants' conduct was willful.  *See Wicaksono v. XYZ 48 Corp.*, No. 10 Civ. 3635, 2011 U.S. Dist. LEXIS 55771, at *7 (S.D.N.Y. May 2, 2011) ("Because

the defendant defaulted and the complaint alleges that all of the violations were undertaken 'knowingly, intentionally and willfully,' the plaintiffs are entitled to finding that the defendant's conduct was willful, and the three year statute of limitations will apply."), *report and recommendation adopted* 2011 U.S. Dist. LEXIS 55734 (May 24, 2011).

In addition, as employers, Defendants should have been aware of their legal obligations under the FLSA and NYLL. Nevertheless, Defendants never paid the Plaintiffs overtime pay and failed to comply with "basic recordkeeping requirements." *Moon v. Kwon*, 248 F. Supp. 2d 201, 231 (S.D.N.Y. 2002). Plaintiffs are therefore entitled to a three-year limitations period on their FLSA claims.

The NYLL has a six-year statute of limitations for the Plaintiffs' state-law claims, regardless of willfulness. N.Y. Lab. L. § 663(3). Because the original Complaint was filed on October 4, 2016, Plaintiff is entitled to damages under NYLL dating back to October 4, 2010.

**E.    Defendants Violated the Wage Theft Prevention Act**

Section 195(1)(a) of the NYLL requires employers to provide all employees with a written notice "at the time of hiring" and containing, *inter alia*, the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, and the name of the employer. N.Y. Lab. L. § 195(1)(a). *See also Jaramillo v. Banana King Rest. Corp.*, No. 12 CV 5649, 2014 U.S. Dist. LEXIS 91261, at *15–16 (E.D.N.Y. June 4, 2014) (citing § 195(1) language), *report & recommendation adopted* 2014 U.S. Dist. LEXIS 90648 (June 30, 2014). Defendants failed to provide this notice at the time of the Plaintiffs' hiring. Am. Compl. ¶ 126; Salazar Aff., ¶¶ 20, 22; Hernandez Aff., ¶¶ 23, 25; Emiliano Aff., ¶¶ 18, 20; Pichardo Aff., ¶¶ 14, 16. Defendants also unlawfully dispensed with their obligation to provide Plaintiffs, with each wage payment, a statement listing "the dates of work covered by that payment of wages, name of

15

employee, name of employer . . . the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked." N.Y. Lab. L. § 195(3).  As detailed in the Amended Complaint, Defendants paid Plaintiffs in personal checks and cash (Am. Compl., ¶¶ 39, 56–59, 71, 84), without a corresponding wage statement with each payment.  *Id.*  Plaintiffs are entitled to statutory damages for Defendants' failure to comply with the WTPA.

## IV.    Plaintiffs Are Entitled to Recover Damages

Because Plaintiffs' well-pleaded allegations in the Amended Complaint, taken as true, establish Defendants' violations of the FLSA and the NYLL, Plaintiffs are entitled to recover damages from Defendants.

"[T]he Court's determination of damages in cases where the defendants are not currently defending their case 'is based solely on plaintiff's submissions.'"  *Gilbert v. Hotline Delivery*, No. 00 Civ. 0160, 2001 U.S. Dist. LEXIS 9876, at *5 (S.D.N.Y. July 10, 2001).  It is within the Court's discretion "whether or not to hold an evidentiary hearing" to determine and calculate damages. *See, e.g.*, *Gesualdi*, 6 F. Supp. 3d at 269.  "[I]n the case of a defendant's default in a FLSA case, 'the courts have held that the plaintiff's recollection and estimates are presumed to be correct.'" *Apolinar*, 2013 U.S. Dist. LEXIS 138137, at *19.

### A.  Unpaid Minimum Wage Calculation

The first step in calculating the minimum wages owed to Plaintiffs is determining Plaintiffs' regular rate of pay for the applicable timeframe.  This was determined by dividing the total weekly pay each Plaintiff received by the hours that the Plaintiff worked that week, up to forty.  As detailed in the damages calculations, Plaintiffs are entitled to the difference between the New York State statutory minimum wage rate and the effective hourly rate Defendants

actually paid Plaintiffs, for all hours worked up to forty in each workweek during their employment.  29 U.S.C. § 206; NYLL § 652; 12 N.Y.C.R.R. § 146.  Plaintiffs' total damages for unpaid minimum wages are $40,960.25. *See* Ex. H to Pechman Aff.

### B.  Unpaid Overtime Wages Calculation

Plaintiffs are entitled to overtime compensation one and one half (1½) times their regular hourly rate for each hour beyond forty per week.  See 29 U.S.C. § 207(a); 12 N.Y.C.R.R. § 146-1.4.  Defendants are employers "in the hospitality industry" within the meaning of 12 NYCRR § 146-1.1, as defined by 12 NYCRR § 146-3.1.  Since Cocina Taller is a restaurant, the Hospitality Wage Order applies in this case, and each Plaintiff's hourly rate must be determined by dividing the Plaintiff's weekly salary by forty hours.  *See* N.Y.C.R.R. § 146-3.5(b).  The Hospitality Wage Order specifically provides that "[e]mployers may not pay employees on a daily, weekly, salary, piece rate or other non-hourly rate basis." *Id*.  Consequences for employers in the hospitality industry who fail to pay their employees an hourly rate of pay are dire, as noted in the Hospitality Wage Order:

> If an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week.

*Id*. § 146–3.5.

Plaintiffs Salazar, Hernandez, and Emiliano worked overtime at least once while employed by Defendants.  Plaintiff Pichardo did not work any overtime hours.  Plaintiffs' total damages for unpaid overtime hours are $3,605.53. *See* Ex. H to Pechman Aff.

### C.  Wage Theft Prevention Act Claims

The Wage Theft Prevention Act ("WTPA"), as amended, effective February 25, 2015, requires that at the time of hiring employers provide a written notice containing (1) the rate or rates of pay and basis thereof; (2) allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; (3) the regular pay day designated by the employer; (4) the employer's name; (5) any "doing business as" names used by the employer; (6) the physical address of the employer's main office or principal place of business, and a mailing address if different; (7) the employer's telephone number; and (8) such other information as the commissioner deems material and necessary.  N.Y. Lab. Law § 195(1)(a).  Employers must provide this notice "in English and in the language identified by each employee as the primary language of such employee."  *Id*.

The wage notice requirement went into effect on April 9, 2011 and permits recovery of $50.00 per week with a cap of $2,500.00.  NYLL § 198(1)(b).  The provision was later amended to allow $50.00 per workday with a cap of $5,000.00 for violations after February 27, 2015.  *Id*.

Also, since April 9, 2011, the NYLL has required that employers "furnish each employee with a statement with every payment of wages, listing the following information: (1) the dates of work covered by that payment of wages; (2) the employee's name; (3) the employer's name, address, and telephone number; (4) the rate or rates of pay and basis thereof; (5) gross wages; (6) deductions; (7) allowances, if any, claimed as part of the minimum wage; and (8) net wages.  N.Y. Lab. L. § 195(3).

"Prior to February 25, 2015, the failure to [provide an accurate wage statement] was a violation for which plaintiffs could receive $100 per work week in damages, with a cap of

18

$2,500." *Perez v. Platinum Plaza 400 Cleaners, Inc*., No. 12 Civ. 9353, 2015 U.S. Dist. LEXIS 54066, at *11–12 (S.D.N.Y. April 24, 2015) (NYLL § 198(1–d)).

Amendments to these provisions became effective on February 27, 2015, and increased the penalties for failure to provide wage statements to $250.00 in damages per workday with a cap of $5,000.00.  NYLL §198(1–d) (2015).  Indeed, Plaintiff is entitled to damages for the Defaulting Defendants' failure to provide wage statement with **each** payment of wages." *Perez*, 2015 U.S. Dist. LEXIS 54066, at *14–15 (emphasis added).

Defendants are liable for their failure to provide Plaintiffs with wage notices pursuant to Section 195(1) of the NYLL, $50.00 per work day, up to $5,000.00, and wage statements pursuant to Section 195(3) of the NYLL, $250.00 each workday the violation continued to occur, up to $5,000.00.  N.Y. Lab. Law §§ 198(1–b), 198(1–d) (McKinney 2015).  Plaintiffs total damages for WTPA violations are $31,100.00. *See* Ex. H to Pechman Aff.

### D.   Liquidated Damages

#### 1.   Fair Labor Standards Act

"Both federal and state law provide for an award of liquidated damages to plaintiffs who establish that an employer has failed to pay required wages." *Jaramillo*, 2014 U.S. Dist. LEXIS 91261, at *11.  Liquidated damages consisting of 100 percent of unpaid wages are "the norm" in FLSA cases. *Yang*, 427 F. Supp. 2d at 340 ("Under the FLSA, an employer who violates the statute's overtime compensation provision is liable for any unpaid overtime compensation and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b)).  A court may reduce the amount of liquidated damages only if defendants can prove that they acted in good faith. 29 U.S.C. § 260.  "The employer's burden, though, is a difficult one to meet . . . ." *Yang*, 427 F. Supp. 2d at 340 (citation omitted).  Because Defendants defaulted, they should not be given the opportunity to

contest liquidated damages.  *See Pereira v. J. Sisters Hair Care Prods., Inc.,* No. 08-CV-4537, 2010 U.S. Dist. LEXIS 53137, at *6–8 (S.D.N.Y. Apr. 5, 2010) (awarding plaintiffs liquidated damages against defaulting defendants based on allegations of unpaid wages).  In addition, for the reasons discussed above, Defendants' actions were willful and thus were not made in good faith. Plaintiffs are therefore entitled to recover liquidated damages consisting of 100 percent of their FLSA damages.  29 U.S.C. § 216(b).

### 2.  New York Labor Law

Liquidated damages are also appropriate under the NYLL when Defendants' actions were willful.  N.Y. Lab. L. § 198(1–a).  The standard for willfulness under the NYLL and the FLSA is substantially the same.  *See Moon*, 248 F. Supp. 2d at 235. Willfulness can be established when employers voluntarily underpay their employees.  *Pereira*, 2010 U.S. Dist. LEXIS 53137, at *8. For the reasons described above, Defendants' failure to pay lawful wages was willful.

Courts have recently found that employees are not entitled to liquidated damages under both the FLSA and the NYLL.  *See Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59, 60–61 (2d Cir. 2016).  "Courts should award damages under the statute that provides for the greater recovery."  *Leon v. Zita* Chen, No. 16-CV-480 (KAM) (PK), 2017 WL 1184149, at *9 (E.D.N.Y. Mar. 29, 2017) (citing *Luna v. Gon Way Construction, Inc.*, 2017 WL 835321, at *14). Accordingly, Plaintiffs request that the Court grant Plaintiffs' NYLL liquidated damages award, as it is the higher of the two liquidated damage awards.[2]

### E.  Interest

Plaintiffs are entitled to prejudgment interest on damages related to Defendants' failure to pay overtime under the NYLL.  N.Y. C.P.L.R. § 5001(a); N.Y. Lab. L. § 663(1); *Chan v. Sung*

---

[2] The damages calculation provided as Ex. H to the Pechman Aff. calculate liquidated damages under both the FLSA and the NYLL but include in the total only the amount of liquidated damages under the NYLL.

*Yue Tung Corp.*, No. 03 Civ. 6048, 2007 U.S. Dist. LEXIS 33883, at *25–28 (S.D.N.Y. May 4, 2007) (awarding prejudgment interest on compensatory damages recovered under the NYLL). Prejudgment and liquidated damages under the NYLL are not functional equivalents and both may be awarded for violations of the NYLL. *Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011) (citing *Reilly v. Natwest Mkts. Grp., Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)).

New York law sets the statutory interest rate at nine percent per annum. *Id.*; N.Y. C.P.L.R. § 5004. When a plaintiff has incurred damages at various times, prejudgment interest "shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). Plaintiffs are entitled to pre-judgment interest should any sums be awarded by the Court, accruing from the date prescribed under N.Y. CPLR § 5001, at the annual rate of nine percent, pursuant to N.Y. CPLR § 5004. Plaintiffs are also entitled to post-judgment interest should any sums be awarded by the Court, beginning on the date judgment is entered, at the rate prescribed by 28 U.S.C. § 1961. *See Fermin v. Las Delicias Peruana Rest., Inc.*, 93 F. Supp. 3d 19, 23 (E.D.N.Y. 2015) (awarding post-judgment interest in FLSA case).

### F. Attorneys' Fees and Costs

The FLSA and the NYLL provide for recovery of reasonable attorneys' fees and costs by successful plaintiffs. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1–a), (1–d), 663. The FLSA and NYLL are remedial statutes designed to protect the low-wage workers. "Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk," like the risk presented here of collecting against an absent defendant. *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010). Experienced counsel

expended a significant but reasonable amount of time in litigating this matter—interviewing and investigating Plaintiffs' claims, drafting the Complaint and Amended Complaint, engaging with counsel for Defendants prior to his withdrawal from the matter, attempting to engage Defendants to continue to participate in this litigation, tracking the status of the bankruptcy matter filed by Defendant 203 Lena Inc., requesting a lift of the stay of this matter following the dismissal of the bankruptcy case, and seeking a default judgment, including preparing the instant motion.

Unlike other members of the FLSA plaintiffs' bar in New York City, PLG regularly represents both employers and employees in wage-and-hour litigations.  PLG's defense clients, including Fortune 500 companies, actually pay for the firm's legal services at each attorney's full hourly rate, which are the rates requested in this application.  *See, e.g.*, *Lora v. J.V. Car Wash, Ltd.*, No. 11 Civ. 9010, 2015 U.S. Dist. LEXIS 99444, at *21 (S.D.N.Y. July 24, 2015) (approving fee rate, considering that "ADK's requested rates are the amounts that [both attorneys] actually charge to their hourly-paying clients in other employment matters" and that "the retainer agreements signed by plaintiffs in this case set forth a $[600] hourly rate as an alternative to the contingency fee basis for compensation").

A reasonable hourly rate should be "'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation,'" with the "community" defined as the district in which the court sits.  *Flores v. Chirping Chicken NYC City*, No. 14–CV–1594, 2017 U.S. Dist. LEXIS 33381, at *26 (S.D.N.Y. Mar. 6, 2017) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)); *see also Perdue v. Kenny A.*, 559 U.S. 542, at 551 (2010) (citation omitted) ("[T]he lodestar looks to 'the prevailing market rates in the relevant community.").  According to the 2016 Wolters Kluwer and CEB Real Rate Report Snapshot, the mean "Real Rate" for Partners and Associates working in Labor and Employment law in New

York City was $689.35 and $467.62, respectively. *See* 2016 Real Rate Report Snapshot, 121, (2016) (January 22, 2018). PLG's attorneys should be at the top end of the range of fees awarded to wage-and-hour attorneys. As Judge Pitman has noted:

> Louis Pechman and the Pechman Law Group have significant experience representing both employers and employees in wage and hour actions in this District . . . . Louis Pechman has an excellent reputation in this District in the field of employment law.

*Manley v. Midan Rest., Inc.*, No. 14 Civ. 1693, 2017 U.S. Dist. LEXIS 44560, at *25 (S.D.N.Y. Mar. 27, 2017) (citation omitted); *see also* Pechman Aff., ¶ 50.

Commensurate with counsel's experience, and the regular hourly rate which PLG charges its clients[34], Plaintiffs request attorneys' fees at the following rates for the attorneys involved in this litigation: $600.00 for Louis Pechman, $400.00 for Lillian Marquez, and $350.00 for Laura Rodriguez. The attorneys' biographies, outlining their extensive experience in wage-and-hour litigation, are set forth in the attached Marquez Affidavit. *See* Pechman Aff., ¶¶ 49–55.

Finally, it is no secret that low-wage workers who are victims of wage theft do not pay a "reasonable hourly rate," because private attorneys take these cases on a contingency basis. To be clear, the "reasonable paying FLSA client" is an oxymoron because a worker who is making less than the minimum wage and has an FLSA claim is simply not an hourly-paying client of any attorney in New York City. *See, e.g.*, *Orient Overseas Container v. Crystal Cove Seafood*, No.

---

[4] Although Magistrate Judge Pitman awarded a $500 hourly rate to Louis Pechman in *Manley v. Midan Rest. Inc., et al.*, 14 Civ. 0697, 2017 WL 1155916, at *12 (S.D.N.Y. Mar. 27, 2017), he did not give any weight to the fact that PLG's clients regularly pay the requested fees. *See Mills v. Capital One*, 14 Civ. 1937, 2015 U.S. Dist. LEXIS 133530, at *31, (S.D.N.Y. Sept. 30, 2015) ("The hourly rates used in making a fee award should be 'what a reasonable, paying client would be willing to pay.'") (citing *Arbor Hill Concerned Citizens Neighborhoods Ass'n v. Cty. of Albany*, 522 F.3d 182, 184 (2d Cir. 2007)), *see also Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008) ("[T]he range of rates that plaintiff's counsel actually charge their clients . . . is obviously strong evidence of what the market will bear."); *Lilly v. County of Orange*, 910 F. Supp. 945, 949 (S.D.N.Y. 1996) ("The actual rate that counsel can command in the market place is evidence of the prevailing market rate."); *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993) ("The best measure of the cost of an attorney's time is what that attorney could earn from paying clients."). In this regard, the regular hourly rate paid by PLG clients is a better indicator of PLG's prevailing hourly rate, rather than the imaginary rate based on urban legend which is typically awarded to contingency attorneys in this District whose clients never pay by the hour.

10 Civ. 3166 (PGG) (GWG), 2012 U.S. Dist. LEXIS 182821, at *29 (S.D.N.Y. Dec. 28, 2012) ("[C]ase law notes that '[t]he appropriate measure is the market rate for [the attorney's] services by clients who can afford them, not [the] client's perceived ability to pay.'").  Where a law firm has a history of actual hourly clients paying an actual hourly rate, this Court should deem that rate presumptively reasonable.  There is no basis to rely on a fictional market rate when counsel has a well-established hourly rate, paid by scores of individuals, executives, and companies.

For these reasons and those stated in the Affidavit by Louis Pechman, counsel for Plaintiffs requests $41,305.00 in fees.  Plaintiffs also request $533.00 in costs.  *See* Pechman Aff., Ex. I. PLG paid these costs on behalf of Plaintiffs pursuant to the terms of the retainer agreement.  All costs were reasonably and necessarily incurred and are readily identifiable.  The costs consist of $400.00 in fees for the filing of the Complaint and $153.00 in fees for serving the Summons and Complaint on Defendants.

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court issue a default judgment in Plaintiffs' favor against Defendants in the amount of $197,938.00 plus pre- and post-judgment interest.

Dated:  New York, New York
         November 21, 2019

PECHMAN LAW GROUP PLLC

By:    *s/Louis Pechman*
       Louis Pechman, Esq.
       Laura Rodriguez, Esq.
       488 Madison Avenue, 17th Floor
       New York, New York 10022
       Tel.: (212) 583-9500
       pechman@pechmanlaw.com
       rodriguez@pechmanlaw.com
       *Attorneys for Plaintiffs*

24