USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  9/18/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

ANYELA SALAZAR, ANEL HERNANDEZ,      :
ROBERT ENMANUEL EMILIANO, and        :
CAROLINA PICHARDO,                   :
                                     :       **REPORT &**
               Plaintiffs,           :       **RECOMMENDATION**
                                     :
                                     :       16-CV-7743 (VB) (JLC)
        -against-                    :
                                     :
203 LENA INC. *d/b/a* COCINA TALLER and  :
DARIO OLEAGA,                        :
                                     :
               Defendants.           :

-------------------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Vincent L. Briccetti, United States District Judge:**

Plaintiffs Anyela Salazar, Anel Hernandez, Robert Emiliano, and Carolina

Pichardo (together, "Plaintiffs") were employed at a restaurant named Cocina Taller

in Manhattan at various times between July 2014 and November 2016.  Plaintiffs

allege that 203 Lena Inc. d/b/a Cocina Taller and Dario Oleaga (together,

"Defendants") violated the Fair Labor Standards Act and New York Labor Law by

failing to pay them minimum and overtime wages and spread of hours

compensation, and by failing to provide them with wage statements and wage

notices.  On January 3, 2020, a default judgment on liability was granted against

Defendants and on January 6, 2020, the matter was referred to me for an inquest

into damages.  For the reasons that follow, I recommend that Plaintiffs be awarded

$125,236.22 in damages, as apportioned below, along with pre-judgment and post-

judgment interest, and $23,561.50 in attorneys' fees and costs.

## I.     BACKGROUND

### A.     Facts

The following facts, which are drawn from a review of Plaintiffs' pleadings, affidavits, and submissions related to this inquest, are deemed established for the purpose of determining the damages to which they are entitled.  *See, e.g.*, *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (internal citation omitted); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendants'] default, a court is required to accept all of [plaintiffs'] factual allegations as true and draw all reasonable inferences in [their] favor[.]") (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

Defendant Dario Oleaga owns and operates a Latin American restaurant in Manhattan named Cocina Taller.  Amended Complaint ("Compl."), Dkt. No. 27 ¶¶ 1–2.  At various times between 2014 and 2016, Plaintiffs were employed as waiters at Cocina Taller.  *Id.* ¶¶ 7–14, 20–22.  Defendants regularly failed to pay Plaintiffs the minimum wage, as required by the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), and failed to provide them with wage statements and wage notices, as required by NYLL and the Wage Theft Prevention Act.  *Id.* ¶¶ 91–97, 120–27.  Moreover, Salazar, Hernandez, and Emiliano were never compensated with overtime wages as required by the FLSA and NYLL despite regularly working more than 40 hours per week, and also had their wages

unlawfully deducted for "customer walk-outs." *Id.* ¶¶ 40, 56, 72, 105–14.

Defendants also failed to pay Salazar and Hernandez "spread of hours"

compensation for days in which they worked more than 10 hours, as required by

NYLL. *Id.* ¶¶ 115–19.

## B.   Procedural History

On October 4, 2016, Plaintiffs commenced this action by filing a complaint

against Oleaga, 203 Lena, and Pedro Abel, which Defendants moved to dismiss on

December 14, 2016. Dkt. Nos. 1, 18. On January 12, 2017, Plaintiffs filed an

amended complaint, naming as Defendants only 203 Lena and Oleaga. Dkt. No. 27.

Defendants answered the amended complaint on May 15, 2017. Dkt. No. 28. On

May 15, 2017, defense counsel filed a motion to withdraw, which was granted on

May 16, 2017. Dkt. Nos. 32–35. Thereafter, on July 5, 2017, Plaintiffs moved to

compel Defendants to respond to discovery requests and to retain counsel. Dkt. No.

36. The motion, which was unopposed, was granted on August 23, 2017. Dkt. No.

42. Following a letter from 203 Lena's bankruptcy counsel reporting that the

business had filed for bankruptcy in August 2017, the case was then stayed as to

both Defendants on September 7, 2017. Dkt. Nos. 43–44.

Following the filing of a notification that the bankruptcy proceeding had been

dismissed, the stay was lifted on May 17, 2019 and 203 Lena was directed to retain

counsel. Dkt. No. 60. Oleaga was instructed to file a letter on the docket by June

17, 2019 updating his address if he chose to proceed *pro se*. *Id.* Neither Defendant

complied with this order, even after an extension of the deadline. *See* Dkt. Nos. 63,

66.  After continued noncompliance with the order, the Clerk entered Defendants'

default on August 20, 2019.  Dkt. No. 67.

Plaintiffs subsequently moved by order to show cause for default judgment

against Defendants on November 21, 2019, Dkt. Nos. 78–79, and submitted a

memorandum of law in support of their motion, along with affidavits, damages

calculations, paystub records, and attorney billing records.  *See* Plaintiffs'

Memorandum of Law in Support of Motion for Default Judgment ("Pl. Mem."), Dkt.

No. 81; Affidavit of Louis Pechman ("Pechman Aff.") and attached exhibits, Dkt.

Nos. 80–80-9.  On December 3, 2019, Defendants were ordered to show cause why a

default judgment should not be granted in Plaintiffs' favor and to appear at a

hearing scheduled for January 3, 2020.  Dkt. No. 83.  Defendants failed to respond

to the order or appear at the hearing, at which Plaintiffs were found to have

sufficiently established Defendants' liability.  *See* Dkt. No. 95 at 4.  As a result,

Plaintiffs' motion for default judgment was granted on January 3, 2020 and the

matter was referred to me for an inquest on damages.  Dkt. Nos. 86–87.

On January 6, 2020, after identifying several calculations in Plaintiffs'

submissions that appeared to be unsupported or the result of mathematical errors, I

directed Plaintiffs to make a further submission as part of the inquest.  Dkt. No. 88.

On January 24, 2020, Plaintiffs made a supplemental submission in the form of a

letter from attorney Laura Rodriguez ("Rodriguez Let."), Dkt. No. 89, a damages

calculation spreadsheet, Dkt. No. 89-1, and supplemental affidavits from each

plaintiff explaining their calculations, Dkt. Nos. 89-2–89-5.  On February 3, 2020,

4

Oleaga moved to vacate the default judgment.  Dkt. Nos. 91–93.  This motion was denied on May 14, 2020.  Dkt. No. 95.

Plaintiffs request damages in the amount of $143,301.67: $78,080.36 to Salazar, $45,010.49 to Hernandez, $13,419.26 to Emiliano, and $6,791.56 to Pichardo.  Rodriguez Let. at 1; Dkt. No. 89-1 at 1.  Plaintiffs also request $41,858 in attorneys' fees and costs in addition to pre-judgment and post-judgment interest. Rodriguez Let. at 1; Pl. Mem. at 20–24.  Defendants have filed no opposition to Plaintiffs' inquest submissions.

## II.   DISCUSSION

### A.   Legal Standards

"Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true.  The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted). "[E]ven when the defendant[s] default[ ] and [are] not present to object," plaintiffs have the burden of establishing their entitlement to "damages . . . based on admissible evidence."  *House v. Kent Worldwide Mach. Works. Inc.,* 359 F. App'x 206, 207 (2d Cir. 2010).  To establish damages upon default, Plaintiffs must demonstrate that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded."  *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 159 (2d Cir. 1992).

5

The Second Circuit has long approved the process of conducting an inquest by affidavit, without an in-person court hearing, "'as long as [the court has] ensured that there was a basis for the damages specified in the default judgment.'" *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997) (quoting *Fustok v. ContiCommodity Servs., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989)).  In this case, "a hearing is not necessary, as documents submitted in this action provide a 'sufficient basis from which to evaluate the fairness' of the damages requested." *Am. Jewish Comm. v. Berman,* No. 15-CV-5983 (LAK) (JLC), 2016 WL 3365313, at *4 (S.D.N.Y. June 15, 2016) (quoting *Fustok,* 873 F.2d at 40), *adopted by* 2016 WL 4532201 (Aug. 29, 2016).

An employee seeking to recover unpaid wages "'has the burden of proving that he performed work for which he was not properly compensated.'"  *Jiao v. Chen,* No. 03-CV-165 (DF), 2007 WL 4944767, at *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 689 (1946)).  "[T]he employee should not speculate, but may rely on his present memory and recollection to carry the burden." *Maldonado v. La Nueva Rampa, Inc.,* No. 10-CV-8195 (LLS) (JLC), 2012 WL 1669341, at *3 (S.D.N.Y. May 14, 2012) (internal citations and quotation marks omitted), *adopted by* Order dated Aug. 9, 2012 (Dkt. No. 20).  Absent "rebuttal by defendants . . . [the employee's] recollection and estimates of hours worked are presumed to be correct." *Kernes v. Glob. Structures, LLC,* No. 15-CV-659 (CM) (DF), 2016 WL 880199, at *6 (S.D.N.Y. Mar. 1, 2016) (internal citations and quotation marks omitted) (alterations in original).

**B.      Analysis**

As an initial matter, there is no applicable statute of limitations defense under NYLL or the FLSA here.  Under NYLL, the statute of limitations is six years, and under the FLSA, the statute of limitations is two years for standard violations and three years for willful violations.  *See* NYLL § 663(3); 29 U.S.C. § 255(a).  The amended complaint alleges that the acts of Defendants were willful (Compl. ¶¶ 91–97), and the Court accepts this allegation as true given Defendants' default.  *See, e.g., Wicaksono v. XYZ 48 Corp.*, 10-CV-3635 (LAK) (JCF), 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011) (because defendant defaulted and complaint alleged willfulness, plaintiffs entitled to willfulness finding and application of FLSA three-year statute of limitations), *adopted by* 2011 WL 2038973 (May 24, 2011). Therefore, the limitations period for all of Plaintiffs' federal claims is three years.  *See, e.g., Rodriguez v. Queens Convenience Deli* Corp., No. 09-CV-1089 (KAM) (SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011).  "The statute of limitations starts to run when the employee begins to work for the employer."  *Id.* (citation omitted).  Salazar alleges that she began working at Cocina Taller in July 2014; Hernandez in July 2015; Emiliano in January 2016; and Pichardo in March 2016.  Compl. ¶¶ 29, 48, 67, 81.  Because this action was commenced on October 4, 2016, *See* Compl., less than three years after each Plaintiff's start date, their employment periods are within both statutes of limitations.

1.     **Unpaid Wages**

a.     **Applicable Law**

Plaintiffs allege that they were not paid minimum wage, overtime, or spread of hours compensation during their employment.  Compl. ¶¶ 3, 41, 44–45, 60, 63, 74, 77, 85, 88.  Employers must pay employees a statutory minimum wage according to both federal and state law.  *See* 29 U.S.C. § 206(a)(1); NYLL § 652(1); 12 NYCRR § 146-1.2.  The FLSA requires employers to pay employees at least the federal minimum wage for every hour worked, 29 U.S.C. § 206, or the state minimum wage if it exceeds the federal minimum wage.  *See* 29 U.S.C. § 218(a).  Since 2009, the minimum wage under the FLSA has been $7.25 per hour.  29 U.S.C. § 206(a)(1)(C).  Under NYLL, the state minimum wage was $8.00 per hour between December 31, 2013 and December 30, 2014; $8.75 per hour between December 31, 2014 and December 30, 2015; and $9.00 per hour between December 31, 2015 and December 30, 2016.  *See* NYLL § 652(1).

In addition, both federal and state law require employers to pay employees overtime wages in the amount of one and one-half times the minimum wage for time worked in excess of 40 hours per week.  29 U.S.C. § 207(a)(1); 12 NYCRR §§ 146-1.4, 142-2.2; *Pequero v. Montafon, LLC,* No. 18-CV-12187 (DF), 2020 WL 4016756, at *4 (S.D.N.Y. July 15, 2020) (FLSA "requires employers to pay overtime for employment in excess of [40 hour per week] . . . at a rate not less than one and one-half times the regular rate at which [the employee] is employed.") (internal quotation omitted) (quoting 29 U.S.C. § 207(a)(1)); *Yeh v. Han Dynasty, Inc.,* No. 18-CV-6018 (PAE), 2020 WL 883501, at *5 (S.D.N.Y. Feb. 24, 2020) (citing 29 U.S.C. §

8

207(a), 12 NYCRR § 142-2.2).  Appropriate overtime wages are "calculated by multiplying [an employee's] regular hourly rate (or the minimum wage rate, if his regular hourly rate falls below the minimum wage) by one and one-half.  That rate is then multiplied by the number of hours in excess of forty hours the employee worked each week." *Rosendo v. Everbrighten Inc.,* No. 13-CV-7256 (JGK) (FM), 2015 WL 1600057, at *4 (S.D.N.Y. Apr. 7, 2015), *adopted by* 2015 WL 4557147 (July 28, 2015).

While Plaintiffs are limited to choosing a recovery for unpaid minimum and overtime wages based on either the FLSA or NYLL, they may "recover under the statute that provides for the greatest relief." *Arnoldo Lopez Vasquez v. Lahori Kebab & Grill Corp.,* No. 18-CV-2117 (JS) (SIL), 2019 WL 4396724, at *6 (E.D.N.Y. Aug. 13, 2019) (internal quotation omitted), *adopted sub nom. Vasquez v. Lahori Kebab & Grill Corp.,* 2019 WL 4620922 (Sept. 5, 2019).  Here, the award of damages should be made pursuant to NYLL because it provides the greatest relief under the minimum wage laws (as well as for overtime, liquidated damages, and statutory damages).

Moreover, under New York law, employees are also entitled to receive "spread of hours" compensation.  This requires "one additional hour of pay at the basic minimum hourly rate" for any workday that lasts longer than ten hours.  12 NYCRR § 146–1.6(a).  "The additional hour of pay is not a payment for time worked or work performed and need not be included in the regular rate for the purpose of calculating overtime pay." *Id.* § 146–1.6(e).  To calculate damages owed for a spread

of hours claim, one multiplies the number of days the employee worked more than 10 hours by the applicable minimum wage rate.  *See* 12 NYCRR § 146–1.6.

### b.   Calculations Under the Applicable Law

In making the following calculations, the Court will employ the minimum wage rate under NYLL, as Plaintiffs have requested: $8.00 per hour from January 1, through December 31, 2014; $8.75 per hour between January 1 through December 31, 2015; and $9.00 per hour from Januart 1 through December 31, 2016. *See* Dkt. No. 89-1.

### i.  Salazar's Wages

The Court calculates the damages owed to Salazar by totaling the minimum wage, overtime, and spread of hours compensation she is owed and subtracting from that total the compensation she received.  Salazar worked for Defendants from July 31, 2014 to June 10, 2016.  Affidavit of Anyela Salazar dated Sept. 25, 2019 ("Salazar Aff."), Dkt. No. 80-2 ¶ 1.  During that time, she worked three different schedules: one schedule involved working approximately 33.5 hours per week; a second schedule involved 41.5 hours per week; and the third schedule involved 48 hours per week.  *Id.* ¶¶ 10–11.  Salazar worked 22 weeks when the NYLL statutory minimum wage rate was $8.00 and the overtime rate was $12.00; 51 weeks when the minimum wage rate was $8.75 and the overtime rate was $13.13; and 23 weeks when the minimum wage rate was $9.00 and the overtime rate was $13.50.  *See* Dkt. No. 80-8 (damages chart).

The minimum wages owed per period are calculated by multiplying the number of weeks worked per period by the schedule (average hours worked per week), and further multiplying that total by the minimum wage rate. For example, for 10 weeks in the pay period spanning from July 3, 2014 to December 31, 2014, Salazar worked a schedule involving an average of 33.5 hours per week. The minimum wage rate at that time was $8.00. Therefore, she is owed $2,680.00 for that schedule during that period (10 weeks x 33.5 hours x $8.00 minimum wage). For weeks during which Salazar worked more than 40 hours, the number of overtime hours per week are subtracted from the total hours per week and calculated according to the overtime rate, such that only 40 hours per week are multiplied by the statutory minimum wage rate.

Overtime wages owed are calculated by identifying the number of overtime hours worked per week (*i.e.*, the number of hours per week worked beyond 40 hours) and multiplying that number by the number of weeks worked per pay period and the overtime rate during the pay period. For example, Salazar earned 1.5 overtime hours per week during weeks in which she worked 41.5 hours. In the pay period spanning from July 3, 2014 to December 31, 2014, she worked a 41.5-hour schedule for 6 weeks. During that time, the overtime rate was $12.00. Therefore, she is owed $108.00 in overtime wages during that period for that schedule (6 weeks x 1.5 overtime hours x $12.00 overtime rate).

Spread of hours compensation is calculated by determining the number of days per week during which Salazar worked longer than 10-hour shifts.[1]  The Court then multiplies the number of spread of hours days per week by the minimum wage rate and the weeks worked per period to calculate the total spread of hours compensation owed per period.  For example, Salazar worked a schedule involving 2 spread of hours shifts per week for 10 weeks during the pay period spanning from July 3, 2014 to December 31, 2014 (at which time the minimum wage rate was $8.00).  Therefore, for this schedule and pay period, she is owed $160.00 in spread of hours compensation (2 spread of hours days per week x 10 weeks x $8.00 minimum wage).  Calculations for the total minimum wage, overtime, and spread of hours compensation owed to Salazar are set out in the following table:

---

[1] This number is determined by the shifts described in Salazar's affidavit.  For example, when Salazar worked 33.5 hours per week, she worked two 12.5-hour shifts and one 8.5-hour shift, totaling 2 spread of hours days per week.  *See* Salazar Aff. ¶ 10.  When she worked 41.5 hours per week, the additional hours were added to her 8.5 hour shift, bringing her total spread of hours days per week to three.  *Id; see also* Rodriguez Let. at 5.

**Table 1: Minimum, Overtime ("OT"), and Spread of Hours ("SOH") Compensation Salazar Should Have Earned**

| Pay Period | Weeks Worked | Schedule (Avg. Hrs Per Week) | Min. Wage Rate | Min. Wage Owed Per Pd | OT Hrs Per Week | OT Rate | OT Owed Per Period | SOH Days Per Week | SOH Owed Per Period |
|---|---|---|---|---|---|---|---|---|---|
| 7/31/14 – 12/31/14 (*22 weeks*) | 10 | 33.5 | $8.00 | $2,680.00 | 0 | $12.00 | $0.00 | 2 | $160.00 |
| | 6 | 41.5 | | $1,920.00 | 1.5 | | $108.00 | 3 | $144.00 |
| | 6 | 48 | | $1,920.00 | 8 | | $576.00 | 2 | $96.00 |
| 1/1/15 – 5/30/15 (*21 weeks*)[2] | 14 | 33.5 | $8.75 | $4,103.75 | 0 | $13.13 | $0.00 | 2 | $245.00 |
| | 3 | 41.5 | | $1,050.00 | 1.5 | | $59.09 | 3 | $78.75 |
| | 3 | 48 | | $1,050.00 | 8 | | $315.12 | 2 | $52.50 |
| 6/1/15 – 9/30/15 (*17 weeks*) | 11 | 33.5 | | $3,224.38 | 0 | | $0.00 | 2 | $192.50 |
| | 3 | 41.5 | | $1,050.00 | 1.5 | | $59.09 | 3 | $78.75 |
| | 3 | 48 | | $1,050.00 | 8 | | $315.12 | 2 | $52.50 |
| 10/1/15 – 12/31/15 (*13 weeks*) | 5 | 33.5 | | $1,465.63 | 0 | | $0.00 | 2 | $87.50 |
| | 4 | 41.5 | | $1,400.00 | 1.5 | | $78.78 | 3 | $105.00 |
| | 4 | 48 | | $1,400.00 | 8 | | $420.16 | 2 | $70.00 |
| 1/1/16 – 6/10/16 (*23 weeks*) | 11 | 33.5 | $9.00 | $3,316.50 | 0 | $13.50 | $0.00 | 2 | $198.00 |
| | 6 | 41.5 | | $2,160.00 | 1.5 | | $121.50 | 3 | $162.00 |
| | 6 | 48 | | $2,160.00 | 8 | | $648.00 | 2 | $108.00 |

Next, the Court calculates Salazar's unpaid wages per period by adding the total wages owed per period and subtracting the amount of pay received. Salazar initially only received tips as compensation, although she later received $20 per workday beginning in June 2015 (regardless of hours worked), and $40 per day beginning in October 2015. Salazar Aff. ¶¶ 13–14. The total pay received per

---

[2] The pay period from 1/1/15–5/30/15 contains 21 weeks, as Plaintiffs recognized in their damages calculations. *See* Dkt. No. 89-1 at 2. However, for this pay period, Plaintiffs claim that Salazar worked Schedule 1 for 14 weeks, Schedule 2 for three weeks, and Schedule 3 for three weeks, which totals 20 weeks. *See id.* (Weeks Worked Schedule in Column E for time period from 1/1/15 to 5/30/15). Because it is unclear whether this tally reflects an error in Plaintiffs' account of Salazar's weeks worked, or is a reflection of the fact that Salazar did not work one of the weeks in the pay period, the Court calculates the number of weeks worked in this period according to the schedules set out in the damages calculations spreadsheet (which total 20 weeks).

period is calculated by multiplying the number of days worked per week by the number of weeks per period at the rate per day.  For example, in the pay period between June 1, 2015 and September 30, 2015, during which she was paid a flat rate of $20 per day, Salazar worked three days per week for 11 weeks.  For that schedule in that pay period, then, she received $660.00 (3 days per week x 11 weeks per period x $20 per day).  Salazar's unpaid wages are set out in the following table:

**Table 2: Unpaid Wages Calculations for Salazar**

| Pay Period | Days Worked Per Week | Weeks Per Period | Pay per Day | Min. Wage Owed Per Period | OT Owed Per Period | SOH Owed Per Period | Total Pay Received Per Period | Unpaid Wages per Period |
|---|---|---|---|---|---|---|---|---|
| 7/31/14 – 12/31/14 (*22 weeks*) | 3 | 10 | $0 | $2,680.00 | $0.00 | $160.00 | $0.00 | $2,840.00 |
| | 4 | 6 | | $1,920.00 | $108.00 | $144.00 | $0.00 | $2,172.00 |
| | 5 | 6 | | $1,920.00 | $576.00 | $96.00 | $0.00 | $2,592.00 |
| 1/1/15 – 5/30/15 (*21 weeks*) | 3 | 14 | | $4,103.75 | $0.00 | $245.00 | $0.00 | $4,348.75 |
| | 4 | 3 | | $1,050.00 | $59.09 | $78.75 | $0.00 | $1,187.84 |
| | 5 | 3 | | $1,050.00 | $315.12 | $52.50 | $0.00 | $1,417.62 |
| 6/1/15 – 9/30/15 (*17 weeks*) | 3 | 11 | $20 | $3,224.38 | $0.00 | $192.50 | $660.00 | $2,756.88 |
| | 4 | 3 | | $1,050.00 | $59.09 | $78.75 | $240.00 | $947.84 |
| | 5 | 3 | | $1,050.00 | $315.12 | $52.50 | $300.00 | $1,117.62 |
| 10/1/15 – 12/31/15 (*13 weeks*) | 3 | 5 | $40 | $1,465.63 | $0.00 | $87.50 | $600.00 | $953.13 |
| | 4 | 4 | | $1,400.00 | $78.78 | $105.00 | $640.00 | $943.78 |
| | 5 | 4 | | $1,400.00 | $420.16 | $70.00 | $800.00 | $1,090.16 |
| 1/1/16 – 6/10/16 (*23 weeks*) | 3 | 11 | | $3,316.50 | $0.00 | $198.00 | $1320.00 | $2,194.50 |
| | 4 | 6 | | $2,160.00 | $121.50 | $162.00 | $960.00 | $1,483.50 |
| | 5 | 6 | | $2,160.00 | $648.00 | $108.00 | $1,200.00 | $1,716.00 |
| **TOTAL** | | | | $29,950.26 | $2,700.86 | $1,830.50 | $6,720.00 | **$27,761.62** |

The principal wages due to Salazar (including minimum wages, overtime wages, and spread of hours compensation) therefore total **$27,761.62**.

### ii. Hernandez's Wages

Hernandez was employed by Defendants from July 2015 to mid-November 2016.  Affidavit of Anel Hernandez dated Sept. 26, 2019 ("Hernandez Aff."), Dkt. No.

80-3 ¶ 2.  He worked approximately 41.25 hours per week from July 2015 to June 23, 2016, 30.5 hours per week from June 24, 2016 to October 31, 2016, and 19 hours per week after November 2016.  *Id.* ¶¶ 11–15, 18.  He worked 24 weeks when the statutory minimum wage rate was $8.75 and the overtime rate was $13.13, and 45 weeks when the minimum wage rate was $9.00 and the overtime rate was $13.50.

The Court calculates Hernandez's total minimum, overtime, and spread of hours wages owed per period based on the average hours worked and weeks worked within each pay period.  For any weeks in which Hernandez worked more than 40 hours, 40 of these hours are calculated according to the minimum wage rate, and the rest of the hours are calculated according to the overtime rate.  Moreover, Hernandez averaged 2 spread of hours days per week from the beginning of his employment until June 23, 2016.[3]  Hernandez's minimum, overtime, and spread of hours calculations are summarized in in the following table:

---

[3] From July 2015 until June 23, 2016, Hernandez worked from 4:30 p.m. until 2:00 a.m. from Sunday to Thursday (9.5-hour shifts) and until 3:00 a.m. on Fridays and Saturdays (10.5-hour shifts).  Hernandez Aff. ¶ 11.  Therefore, he worked 2 spread of hours shifts per week during that time.

**Table 3: Minimum, OT, and SOH Compensation Hernandez Should Have Earned per week**

| Pay Period | Weeks Worked | Avg. Hours Per Week | Min. Wage Rate | Min. Wage Owed Per Pd | OT Hours Per Wk | OT Rate | OT Owed Per Pd | SOH Days Per Week | SOH Owed Per week | SOH Owed Per Pd |
|---|---|---|---|---|---|---|---|---|---|---|
| 7/15/15 – 12/31/15 | 24 | 41.25 | $8.75 | $8,400.00 | 1.25 | $13.13 | $393.90 | 2 | $17.50 | $420.00 |
| 1/1/16 – 6/23/16 | 25 | 41.25 | $9.00 | $9,000.00 | 1.25 | $13.50 | $421.88 | 2 | $18.00 | $450.00 |
| 6/24/16 – 10/31/16 | 18 | 30.5 | $9.00 | $4,941.00 | 0 | | $0.00 | 0 | $0.00 | $0.00 |
| 11/1/16 – 11/15/16 | 2 | 19 | $9.00 | $342.00 | 0 | | $0.00 | 0 | $0.00 | $0.00 |

Hernandez received $40 per day, regardless of the hours he worked.

Hernandez Aff. ¶ 18. The Court calculates Hernandez's unpaid wages per period by adding the total minimum wages, overtime wages, and spread of hours compensation owed per period and subtracting the total pay received per period.

**Table 4: Unpaid Wages Calculations for Hernandez**

| Pay Period | Days Worked per Week | Weeks Worked | Pay per day | Min. Wage Owed Per Period | OT Owed Per Period | Total SOH Owed Per Period | Total Pay Received Per Period | Unpaid Wages Per Period |
|---|---|---|---|---|---|---|---|---|
| 7/15/15 - 12/31/15 | 4 | 24 | $40 | $8,400.00 | $393.90 | $420.00 | $3,840.00 | $5,373.90 |
| 1/1/16 – 6/23/16 | 4 | 25 | | $9,000.00 | $421.88 | $450.00 | $4,000.00 | $5,871.88 |
| 6/24/16 – 10/31/16 | 3 | 18 | | $4,941.00 | $0.00 | $0.00 | $2,160.00 | $2,781.00 |
| 11/1/16 – 11/15/16 | 2 | 2 | | $342.00 | $0.00 | $0.00 | $160.00 | $182.00 |
| **TOTAL** | | 69 | | $22,683.00 | $815.78 | $870.00 | $10,160.00 | **$14,208.78** |

Thus, the amount of principal wages due to Hernandez is **$14,208.78**.

### iii. Emiliano's Wages

Emiliano was employed by Defendants from January 18, 2016 to March 29, 2016. Affidavit of Emmanuel Emiliano dated Oct. 9, 2019 ("Emiliano Aff."), Dkt.

No. 80-4 ¶ 2.  He worked approximately 28.5 hours per week for two weeks, and 37.5 hours per week beginning in his third week of employment.  *Id.* ¶¶ 9–11.  On at least one week, he worked an additional 9.5 hours, for a total of 47.5 hours.  *Id.* ¶ 11.[4]  At all times during his employment, the NYLL statutory minimum wage rate was $9.00 and the overtime rate was $13.50.  The Court calculates Emiliano's total minimum and overtime wages owed per period based on the average hours worked and weeks worked within each pay period, as follows:

**Table 5: Minimum and OT Compensation Emiliano Should Have Earned Per Period**

| Pay Period | Weeks Per Period | Avg. Hours Per Week | Min. Wage Rate | Min. Wage Owed Per Period | OT Hours Per Week | OT Rate | OT Owed per Period | Total Wages Owed |
|---|---|---|---|---|---|---|---|---|
| 1/18/16 – 2/1/16 | 2 | 28.5 | $9.00 | $513.00 | 0 | $13.50 | $0 | $513.00 |
| 2/2/16 – 3/29/16 | 7 | 38 | | $2,394.00 | 0 | | $0 | $2,394.00 |
| | 1 | 47.5 | | $360.00 | 7.5 | | $101.25 | $461.25 |
| **TOTAL** | | | | | | | | **$3,368.25** |

Emiliano should have earned $3,368.25 in wages, but instead received a lump sum payment in the amount of $1,122.54.  *Id.* ¶ 14.  Therefore, the total amount in unpaid minimum and overtime wages owed to Emiliano is **$2,245.71.**

### iv. Pichardo's Wages

Defendants employed Pichardo from March 19, 2016 to April 21, 2016.  Affidavit of Carolina Pichardo dated Sept. 26, 2019 ("Pichardo Aff."), Dkt. No. 80-5 ¶ 2.  In her first week of employment, Pichardo worked 2 days for a total of

---

[4] Each of Emiliano's shifts were approximately 9.5 hours, *see* Emiliano Aff. ¶¶ 9–10, so he is not owed spread of hours compensation, *see also* Dkt. No. 89-1 at 4.

approximately 19 hours; thereafter, she worked three days per week for a total of approximately 28.5 hours per week.  *Id.* ¶¶ 11–12.[5]  At all times during Pichardo's employment, the NYLL statutory minimum wage rate was $9.00.  The Court calculates Pichardo's award for unpaid wages as follows:

**Table 6: Minimum Wages Pichardo should have earned per week**

| Pay Period | Weeks Worked | Avg. Hours Per Week | Min. Wage Rate | Total Min. Wage Owed Per Period |
|---|---|---|---|---|
| 3/19/16 - 3/26/16 | 1 | 19 | $9.00 | $171.00 |
| 3/27/16 – 4/21/16 | 4 | 28.5 | | $1,026.00 |
| **TOTAL** | | | | **$1,197.00** |

Pichardo should have earned a total of $1,197.00 for all of the hours worked, but instead received a one-time payment of $240.00.  *Id.* ¶ 13.  Therefore, the principal wages due to Pichardo total **$957.00**.

### 2.    Liquidated Damages

Plaintiffs also seek liquidated damages.  Compl. ¶ 4; Pl. Mem. at 19–20.  Under state and federal law, employees are entitled to liquidated damages "equal to [100%] of the total of such underpayments found to be due," "unless the employer proves a good faith basis for believing that its underpayment of wages was in

---

[5] Pichardo claims to have worked from approximately "4:30 p.m.to 2:00 or 3 a.m." and therefore could potentially qualify for spread of hours compensation for those shifts that lasted until 3 a.m.  Pichardo Aff. ¶ 12.  However, as she does not describe this number with specificity, and Plaintiffs do not claim that she is owed spread of hours compensation in their damages calculations, *see* Dkt. No. 89-1 at 5, the Court does not recommend that she be awarded spread of hours compensation and will calculate the hours worked as if her shift lasted until 2:00 a.m.

compliance with the law."  NYLL §§ 198(l-a), 663(1); 29 U.S.C. §§ 216(b), 260.[6]

"Courts deem defendants' actions willful where they have defaulted and . . . such

defaulting defendants will have obviously made no showing of good faith."

*Schalaudek v. Chateau 20th St. LLC*, No. 16-CV-11 (WHP) (JLC), 2017 WL 729544,

at *10 (S.D.N.Y. Feb. 24, 2017) (quoting *Xochimitl v. Pita Grill of Hell's Kitchen,*

*Inc.,* No. 14-CV-10234 (JGK) (JLC), 2016 WL 4704917, at *18 (S.D.N.Y. Sept. 8,

2016), *adopted by* 2016 WL 6879258 (Nov. 21, 2016)), *adopted as modified,* 2017 WL

1968677 (May 11, 2017).  Under New York Law, liquidated damages include

"spread-of-hours wages in addition to minimum and overtime wages."  *Osorio v.*

*Taste of Thai Inc.*, No. 17-CV-5664 (JBW) (JO), 2018 WL 8059564, at *4 (E.D.N.Y.

Sept. 12, 2018), *adopted by* 2019 WL 1795954 (Mar. 29, 2019).

Plaintiffs request liquidated damages in the amount of the unpaid minimum,

overtime, and spread of hours wages due under NYLL.  Rodriguez Let. at 10.

Because Defendants have defaulted, I recommend that Plaintiffs receive liquidated

damages in the amounts equal to their principal unpaid wages (including minimum

and overtime wages and spread of hours compensation), as follows: **$27,761.62** to

Salazar**; $14,208.78** to Hernandez**; $2,245.71** to Emiliano; and **$957.00** to Pichardo.

### 3.    Unlawful Deductions

Salazar, Hernandez, and Emiliano each maintain that wages from their

paychecks were unlawfully deducted due to customer walkouts in the following

---

[6] Since the Second Circuit's decision in *Rana v. Islam,* 887 F.3d 118, 123 (2d Cir. 2018), it has been settled law that a plaintiff may not receive "duplicative liquidated damages" under both the FLSA and NYLL.

amounts: $1,640 from Salazar, $500 from Hernandez, and $100 from Emiliano.  *See*

Salazar Aff. ¶ 16; Hernandez Aff. ¶¶ 18–21; Emiliano Aff. ¶ 15.  Under NYLL,

> No employer shall make any deduction from wages of an employee, except deductions which: a. are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency; or b. are expressly authorized in writing by the employee and are kept for the benefit of the employee . . . .

NYLL § 193(1).  Customer walkout deductions do not qualify as a legitimate

deduction under the law.  *See, e.g., Cisneros-Calderon v. Salinas Enterprises, LLC,*

No. 08-CV-6406 (KMK) (JCM), 2016 WL 11483853, at *5–8 (S.D.N.Y. Sept. 14,

2016) (damages awarded for defendant's unlawful deductions from paychecks

including, *inter alia,* deductions made from customers' alleged failure to pay

defendant), *adopted as modified,* 2016 WL 6651383 (S.D.N.Y. Nov. 10, 2016).[7]

Accordingly, the Court recommends that Defendants be directed to reimburse the

---

[7] Plaintiffs did not request that these unlawful deductions be calculated as part of the total liquidated damages.  *See* Rodriguez Let. at 10; Pl. Mem. at 19–20; Dkt. No. 89-1 at 2–4.  Some courts have found that the New York regulation providing for liquidated damages, "NYLL § 663[,] does not provide for liquidated damages for violations of NYLL § 193, Article 6, concerning unlawful deductions from wages." *Wimbush v. L.I.C. Pet Transp. Inc.*, No. 16-CV-5363 (PAE) (KNF), 2017 WL 10299581, at *15 (S.D.N.Y. Aug. 25, 2017), *adopted in part, rejected in part on other grounds,* 2018 WL 3388296 (July 12, 2018); *Chen v. New Fresco Tortillas Taco LLC,* 15-CV-2158 (RA) (AJP), 2017 WL 818469, at *1 (S.D.N.Y. Mar. 1, 2017).  *But see Greathouse v. JHS Sec. Inc.,* No. 11-CV-7845 (PAE) (GWG), 2012 WL 5185591, at *3 (S.D.N.Y. Oct. 19, 2012) (unlawful deductions "should have been included" in calculation of liquidated damages), *vacated and remanded on other grounds,* 784 F.3d 105 (2d Cir. 2015).  As Plaintiffs did not request that the unlawful deductions be calculated as part of the liquidated damages, and at least some other courts have found that they are not properly included in the calculation, the Court does not recommend that the deductions be included in the liquidated damages award.

following plaintiffs the following amounts to compensate for the unlawful deductions: **$1,640** to Salazar, **$500** to Hernandez, and **$100** to Emiliano.

### 4.    Statutory Damages

Under New York's Wage Theft Prevention Act ("WTPA"), employers must provide to employees, "with every payment of wages," a statement that lists the following:

> the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages . . . . [T]he statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

NYLL § 195(3).

The WTPA also requires that employers provide each employee with a wage notice at the time of hiring that contains the following information:

> the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

NYLL § 195(1)(a).

Employees who are not provided a wage notice within ten business days of their first day of work can recover damages of "$50 for each workday that a violation occurs or continues to occur, not to exceed $5,000," and employees can recover "$250 for each workday that a wage statement violation occurs or continues to occur, not to exceed $5,000." *Canaveral v. Midtown Diner NYC, Inc.*, No. 19-CV-635 (JLC), 2019 WL 4195194, at *5 (S.D.N.Y. Sept. 5, 2019) (citation omitted).

Plaintiffs all allege that they never received a wage notice or a wage statement that complied with NYLL.  Salazar Aff. ¶¶ 20–22; Hernandez Aff. ¶¶ 23–25; Emiliano Aff. ¶¶ 18–20; Pichardo Aff. ¶¶ 16–18.  As Salazar and Hernandez worked more than 100 days for Defendants, they are entitled to the maximum $5,000 for wage statement violations and $5,000 for wage notice violations, for a total of $10,000 each.  Emiliano worked for a total of 39 days for Defendants, and should therefore receive $1,950 for wage notice violations (39 days x $50) and the maximum of $5,000 for wage statement violations.[8]  Pichardo worked for a total of 14 days for the Defendants and as such, should receive $700 for wage notice violations (14 days x $50), and the maximum of $5,000 for wage statement violations.[9]  Plaintiffs' should therefore be awarded statutory damages as follows: **$10,000 each** to Salazar and Hernandez; **$6,950** to Emiliano; and **$5,700** to Pichardo, for a total of **$32,650.**

---

[8] Emiliano worked for Defendants three times a week for two weeks; four times per week for seven weeks; and five times per week for one week, or 39 days in total. Emiliano Aff. ¶¶ 9–11.

[9] Pichardo worked for Defendants twice in one week and three times per week for four additional weeks, or 14 days in total.  Pichardo Aff. ¶ 2.

### 5.    Summary of Total Damages

In sum, Plaintiffs are entitled to $125,236.22, before the inclusion of pre- and

post-judgment interest, attorneys' fees, or costs.  Plaintiffs' total damages owed

before interest are summarized in the following table:

**Table 7: Total Damages Calculations**

|  | Salazar | Hernandez | Emiliano | Pichardo |
|---|---|---|---|---|
| **Unpaid Wages** | $27,761.62 | $14,208.78 | $2,245.71 | $957.00 |
| **Liquidated Damages** | $27,761.62 | $14,208.78 | $2,245.71 | $957.00 |
| **Unlawful Deductions** | $1,640.00 | $500.00 | $100.00 | $0 |
| **Statutory Damages** | $10,000.00 | $10,000.00 | $6,950.00 | $5,700.00 |
| **TOTAL** | **$67,163.24** | **$38,917.56** | **$11,541.42** | **$7,614.00** |

### 6.    Pre-judgment Interest

Plaintiffs also seek pre-judgment interest.  Compl. ¶ 4; Rodriguez Let. at 2–4.

"[C]ourts typically award pre-judgment interest on damages for NYLL violations."

*Pineda v. Frisolino, Inc.*, No. 15-CV-3774 (GBD), 2017 WL 3835882, at *13

(S.D.N.Y. Aug. 29, 2017) (quoting *McLean v. Garage Mgmt. Corp.*, No. 09-CV-9325

(DLC), 2012 WL 1358739, at *10 (S.D.N.Y. Apr. 19, 2012)).  Pre-judgment interest

is appropriate even when a plaintiff is also awarded liquidated damages under

NYLL.  *See, e.g., id.* (citing *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d

Cir. 1999)).  Pre-judgment interest applies only to the actual, compensatory

damages, and not to liquidated damages or to damages recovered due to violations

of wage statement or wage notice provisions.  *See, e.g., Salustio v. 106 Columbia

Deli Corp.*, No. 15-CV-6857 (GWG), 2017 WL 3736695, at *14 (S.D.N.Y. Aug. 30,

2017) (pre-judgment interest "not available for violations of the wage statement or

wage notice provisions" and "applies only to the amount of underpayment of wages, not the liquidated damages").

New York law provides that interest shall be at the rate of nine percent per year.  N.Y. C.P.L.R. § 5004.  Courts in this District have generally calculated pre-judgment interest from "a singular, midpoint date and by multiplying the principal by the interest rate by the time period — from a singular, midpoint date — up until and including the date judgment is entered."  *Soto v. Los Corbaticas Deli Grocery II Corp.,* No. 18-CV-3602 (JGK) (JLC), 2018 WL 4844018, at *7 (S.D.N.Y. Oct. 5, 2018), *adopted by* 2018 WL 6173713 (Nov. 23, 2018).

### a.  Salazar's Pre-Judgment Interest

July 6, 2015 is the approximate midpoint between Salazar's first (July 31, 2014) and last (June 10, 2016) date of employment.[10]  *See* Salazar Aff. ¶ 2.  As previously calculated, the principal amount she is owed in unpaid minimum and overtime wages and spread of hours compensation is $27,761.62.  Thus, I recommend that Salazar receive nine percent interest on a balance of $27,761.62 from July 6, 2015 until the date that judgment is entered.

### b.  Hernandez's Pre-Judgment Interest

---

[10] Plaintiffs appear to have calculated the midpoint between the date the first paycheck would have been due, rather than the date that each plaintiff began working.  *See* Dkt. No. 89-1 at 2–5 (start dates for calculating pre-judgment interest listed as two weeks after each Plaintiff began employment).  The Court calculates the midpoint between the dates each Plaintiff began and ended working for Defendants.  *See, e.g., Jemine v. Dennis,* 901 F. Supp. 2d 365, 390 (E.D.N.Y. 2012) (midpoint is date "between when plaintiff[s] began and ceased working for defendant[s]") (internal quotation omitted).

The approximate midpoint between Hernandez's start date (July 15, 2015) and end date (November 15, 2016) is March 15, 2016.  *See* Hernandez Aff. ¶ 2.  As noted above, he is owed $14,208.78. in unpaid wages and spread of hours compensation.  Accordingly, a nine percent annual interest rate on $14,208.78 should be applied from March 15, 2016 until the date that judgment is entered.

### c.  Emiliano's Pre-Judgment Interest

February 22, 2016 is the approximate midpoint between the first date of Emiliano's employment (January 18, 2016) and his end date (March 29, 2016).  *See* Emiliano Aff. ¶ 2.  The amount of unpaid wages and spread of hours compensation he is owed totals $2,245.71.  Emiliano should therefore receive nine percent interest on a balance of $2,245.71 from February 26, 2016 until the date that judgment is entered.

### d.  Pichardo's Pre-Judgment Interest

April 4, 2016 is the approximate midpoint between Pichardo's start date of March 19, 2016 and her end date of April 21, 2016.  *See* Pichardo Aff. ¶ 2.  The principal amount she is owed in unpaid wages and spread of hours compensation is $1,011.00.  Pichardo should therefore receive nine percent interest on a balance of $1,011.00 from July 10, 2015 until the date that judgment is entered.

### 7.  Post-judgment Interest

Plaintiffs additionally seek post-judgment interest.  Compl. ¶ 4; Pl. Mem at 21.  The Second Circuit has held that "an award of postjudgment interest is mandatory" and shall be calculated pursuant to federal statute.  *Schipani v.*

*McLeod*, 541 F.3d 158, 165 (2d Cir. 2008).  Post-judgment interest should be "calculated based on the weekly average one-year constant maturity Treasury yield for the week preceding the date on which judgment is entered."  *Martir v. Huntington Provisions Inc.,* No. 19-CV-192412 (DRH) (AYS), 2020 WL 2736696, at *7 (E.D.N.Y. Apr. 29, 2020), *adopted by* 2020 WL 2735173 (May 26, 2020); *see also* 28 U.S.C. § 1961(a) ("[I]nterest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding.").  Plaintiffs are entitled to post-judgment interest on all sums awarded, commencing when the Clerk of the Court enters judgment until the date of payment.

### 8.    Attorneys' Fees

Plaintiffs seek attorneys' fees in the amount of $41,305.00, and $533 in costs. Pl. Mem. at 24; Dkt. No. 80-9.[11]  Plaintiffs are permitted to payment of attorneys' fees and costs under both the FLSA and NYLL.  29 U.S.C. § 216(b); NYLL § 198(l-a).  Courts determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate."  *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *see also Millea v. Metro-North R.R. Co.,* 658 F.3d 154, 166 (2d Cir. 2011); *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008).

---

[11] According to Plaintiffs' memorandum, they seek $41,305 in fees and $533 in costs. This total is $41,838.  Plaintiffs' supplemental letter, however, seeks $41,858. Rodriguez Let. at 1.

Plaintiffs must "document the application [for fees and costs] with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *N. Y. State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir. 1983); *see also Scott v. City of N.Y.,* 626 F.3d 130, 132 (2d Cir. 2010).  Ultimately, a court's discretion to set a fee award is broad.  *See Hensley*, 461 U.S. at 437; *Matusick v. Erie Cnty. Water Auth.,* 757 F.3d 31, 64 (2d Cir. 2014).

### a.    Reasonable Hourly Rate

The reasonable hourly rate is the amount "a reasonable, paying client would be willing to pay," which varies by practice area and location.  *See Arbor Hill,* 522 F.3d at 190.  It is determined according to "market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Restivo v. Hessemann,* 846 F.3d 547, 590 (2d Cir. 2017) (quoting *Gierlinger v. Gleason,* 160 F.3d 858, 882 (2d Cir. 1998) (internal quotations omitted)).  A court may "rely on its own knowledge of local, comparable rates" in making this determination.  *Schalaudek,* 2017 WL 729544, at *12 (citing *Yuquilema v. Manhattan's Hero Corp.,* No. 13-CV-461 (WHP) (JLC), 2014 WL 4207106, at *3–4 (S.D.N.Y. Aug. 26, 2014)).  Courts in this Circuit use the additional factors of "the labor and skill required, the difficulty of the issues, [and] the attorneys' customary hourly rate" in determining a reasonable hourly rate.  *Calle v. Yoneles Enterprises, Inc.*, No. 16-CV-1008 (NGG) (RLM), 2017 WL 6942652, at *18 (E.D.N.Y. Oct. 24, 2017) (citing *Arbor Hill*, 522 F.3d at 186 n.3, 190), *adopted by* 2018 WL 401269

(Jan. 12, 2018).  Ultimately the Court is tasked not with asking "whether the attorneys on this case properly command the rates they seek," but rather with "determin[ing] the cheapest hourly rate an effective attorney would have charged." *O.R. v. New York City Dep't of Educ.*, 340 F. Supp. 3d 357, 364 (S.D.N.Y. 2018) (citing *Arbor Hill,* 522 F.3d at 184).[12]

In this case, Plaintiffs seek an hourly rate of $600 for attorney Louis Pechman of the Pechman Law Group.  Pl. Mem. at 23.  Pechman graduated from Fordham Law School more than 35 years ago, has specialized in labor and employment law throughout his career, was a partner at Berke-Weiss & Pechman LLP for 18 years, and founded Pechman Law Group in January 2015.  Pechman Aff. ¶¶ 52–55.  Other courts in this District have described Pechman as having "significant experience" and an "excellent reputation in this District in the field of employment law."  *Manley v. Midan Rest. Inc.,* No. 14-CV-1693 (HBP), 2017 WL 1155916, at *9 (S.D.N.Y. Mar. 27, 2017).  Nevertheless, the Court finds that the hourly rate requested is high compared with the typical rate for partners in similar cases.  *See Velandia v. Serendipity 3, Inc.,* No. 16-CV-1799 (AJN), 2018 WL 3418776, at *4 (S.D.N.Y. July 12, 2018) (within this District, "FLSA litigators are rarely awarded over $450 per hour") (citing *Manley,* 2017 WL 1155916, at *11)

---

[12] The Court thus respectfully disagrees with Plaintiffs' counsel, who contends that "the regular hourly rate paid by [their] clients is a better indicator of [their] prevailing hourly rate, rather than the imaginary rate based on urban legend which is typically awarded to contingency attorneys in this District whose clients never pay by the hour."  Pl. Mem. at 23, n.4.  The Court does not believe this position is consistent with the dictates of *Arbor Hill.*

(collecting cases).  Moreover, other courts in this Circuit have reduced Pechman's hourly rate to $500 per hour or less.  *See Hernandez v. Boucherie LLC*, No. 18-CV-7887 (VEC), 2019 WL 3765750, at *4 (S.D.N.Y. Aug. 8, 2019) (Pechman's rate reduced from $600 to "very generous $500 per hour"); *Sajvin v. Singh Farm Corp.,* No. 17-CV-04032 (AMD) (RER), 2018 WL 4214335, at *9 (E.D.N.Y. Aug. 13, 2018) (same), *adopted by* 2018 WL 4211300 (Sept 4, 2018); *Velandia,* 2018 WL 3418776, at *4 (same); *Cazarez v. Atl. Farm & Food Inc.,* No. 15-CV-2666 (CBA) (RML), 2017 WL 3701687, at *7 (E.D.N.Y. May 31, 2017) (Pechman's rate reduced to $400), *adopted by* 2017 WL 3701479 (Aug. 25. 2017).  Consistent with these cases, the Court recommends that Pechman's hourly rate be reduced to $500.

Plaintiffs seek an hourly rate of $400 per hour for attorney Lillian M. Marquez, who has been a member in good standing of the New York State Bar since 2011, and who is fluent in Spanish.  Pl. Mem. at 23; Pechman Aff. ¶ 58.  Marquez worked as an associate attorney at Pechman Law Group from September 2016 through August 2019, and had previous experience as a staff attorney for the U.S. Court of Appeals for the Second Circuit and as a law clerk in the Eastern District of New York.  *Id.*  Courts in this District have previously concluded that a rate of $400 per hour is an "excessively" high rate for associates in wage-and-hour cases, and "routinely approve of an hourly rate for associates between $200 and $300." *Velandia,* 2018 WL 3418776, at *4 (citation omitted); *see also Crowhurst v. Szczucki*, No. 16-CV-182 (BAF) (GWG), 2019 WL 6122645, at *11 (S.D.N.Y. Nov. 19, 2019) (courts have "commonly awarded experienced wage-and-hour attorneys rates

29

between $300 and $400 per hour"), *adopted by* 2020 WL 133509 (Jan. 11, 2020).
Recent decisions have reduced Marquez's hourly rate to $300 or less. *See*
*Hernandez, LLC*, 2019 WL 3765750, at *4 (reducing Marquez's rate to $300);
*Cazarez*, 2017 WL 3701687, at *7 (reducing Marquez's rate to $250). As such, the
Court recommends that Marquez's hourly rate be reduced to $300.

For associate Laura Rodriguez, who is a native Spanish speaker, Plaintiffs
seek $350 per hour. Pl. Mem. at 23; Pechman Aff. ¶ 59. Rodriguez was admitted to
the New York Bar nearly five years ago, has worked on more than 70 wage-and-
hour cases, and currently teaches a class at Fordham University School of Law on
employment law. *Id.* In this district, "less experienced attorneys, including
associates, are commonly awarded fees of about $200 to $275 per hour." *Douglas v.*
*Anthem Prods., LLC*, No. 18-CV-5789 (GWG), 2020 WL 2631496, at *3 (S.D.N.Y.
May 26, 2020) (citation omitted) (collecting cases). Accordingly, the Court
recommends reducing Rodriguez's hourly rate to $250.

Plaintiffs also request $100 per hour for paralegals and law clerks who
worked on this matter. Pechman Aff. ¶ 61. Other courts in this District have found
$100 to be a reasonable rate for paralegals in similar cases. *See, e.g., Gonzalez v.*
*Scalinatella, Inc.*, 112 F. Supp. 3d 5, 29 (S.D.N.Y. 2018) (collecting cases).
Therefore, the Court recommends approving the $100 hourly rate.

### b.   Reasonable Hours Expended

After determining the appropriate hourly billing rate, the court calculates the
hours reasonably expended in this case. "In evaluating the reasonableness of hours

expended, courts consider 'not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *O.R.,* 340 F. Supp. 3d at 366–67 (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1999)).  Courts must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *De La Cruz Moreno v. Happy Angel Nail Spa Inc.*, No. 15-CV-10078 (LGS) (GWG), 2019 WL 2438966, at *9 (S.D.N.Y. June 12, 2019) (citing *Lunday v. City of Albany,* 42 F.3d 131, 134 (2d Cir. 1994)), *adopted by* 2019 WL 2717153 (June 28, 2019).  "In determining what fee is reasonable, the court takes account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'" *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley*, 461 U.S. at 434).

"Courts in this Circuit have recognized a district court's authority to make across-the-board percentage cuts in hours, as opposed to an item-by-item approach, to arrive at the reasonable hours expended." *Williams v. Epic Sec. Corp.,* 368 F. Supp. 3d 651, 656–57 (S.D.N.Y. 2019) (citing *Leevson v. Aqualife USA, Inc.*, 296 F. Supp. 3d 503, 526 (E.D.N.Y. 2017)).  "In making its determination of the percentage reduction to be used, the Court is guided by rough justice principles. . . . '[T]rial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.'" *Id.* at 660 (quoting *Errant Gene Therapeutic, LLC v. Sloan-Kettering Inst. for Cancer Research*, 286 F. Supp. 3d 585, 588 (S.D.N.Y. 2018)).

Here, Plaintiffs' legal team billed a total of 121.2 hours in this case: Pechman billed 8 hours, Marquez billed 47.9 hours, Rodriguez billed 50.3 hours, and paralegals and law clerks billed 15 hours.  Pechman Aff. ¶ 61. Counsel have submitted time records with sufficient details including dates, description of the services rendered, and hours expended.  However, the number of hours expended is excessive in this case.  Plaintiffs cite to no cases that would justify the number of hours sought in a default case such as this one; rather, counsel merely asserts *ipse dixit* that the number of hours reported were reasonable and compiled from contemporaneous time records, and that any duplicative billing records were removed.  *Id.* ¶¶ 61–63.  But the number of hours billed in this case far exceeds (indeed, more than doubles) the typical hours awarded in wage-and-hour cases in which the defendant defaults.  *See, e.g. Lopez v. Emerald Staffing, Inc.,* No. 18-CIV-2788 (SLC), 2020 WL 915821, at *14 (S.D.N.Y. Feb. 26, 2020) (68.5 hours reasonable in multiple plaintiff wage-and-hour case litigated for nearly two years but ultimately decided on default); *Gonzales v. Gan Israel Pre-Sch.*, No. 12-CV-6304 (MKB) (VMS), 2014 WL 1011070, at *21 (E.D.N.Y. Mar. 14, 2014) (49.9 hours reasonable in two-plaintiff wage-and-hour case in which defendants defaulted)*; Said v. SBS Elecs., Inc.*, No. 08-CV-3067 (RJD) (JO), 2010 WL 1265186, at *11 (E.D.N.Y. Feb. 24, 2010) (awarding 41.35 hours of attorneys' fees instead of 165.4 hours sought in wage-and-hour case in which defendant defaulted), *adopted as modified,* 2010 WL 1287080 (Mar. 31, 2010).

For starters, there are a number of entries in the time records that the Court views as "excessive" or "unnecessary." *Bliven,* 579 F.3d at 213.  First, many of Marquez and Rodriguez's entries reflect administrative work.[13]  "Filing a document is plainly a task that could have been performed by a junior associate or paralegal, billing at a lower hourly rate." *Pastor v. Alice Cleaners, Inc.*, No. 16-CV-7264 (JLC), 2017 WL 5625556 at *8 (S.D.N.Y. Nov. 21, 2017) (citing *Almanzar v. 1342 St. Nicholas Ave. Rest. Corp.,* No. 14-CV-7850 (VEC) (DF), 2016 WL 8650464, at *19 (S.D.N.Y. Nov. 7, 2016), *adopted by* 2017 WL 1194682 (Mar. 30, 2017)).  "[P]urely clerical" work such as that claimed here is not recoverable in attorney's fees. *Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906 (HBP), 2015 WL 4006896, at *9 (S.D.N.Y. July 1, 2015) (citing *Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 478 (S.D.N.Y. 2009)).  Second, there are many examples in the timekeeping record of "0.10 hours" for "ministerial tasks that could not possibly have taken more than a few moments." *Hernandez*, 2019 WL 3765750, at *6.[14]

---

[13] *See, e.g.,* Dkt. No. 80-9 at 3–4, 8, 10–11, 13 ("ECF File complaint, summonses" 10/4/2016; "Print summonses and draft and file notice of appearance" 10/7/2016; "Scan and file affidavits of service" 11/10/2016; "Draft and file LT to RWS to extend time to respond" 12/28/2016; "Scan and file Amended Complaint" 1/12/2017; "Draft and file Certificate of Service of Letter Motion to Compel" 7/7/2017; "Draft and ECF-file Adjournment Request" 8/3/2017; "File NOA and Proofs of Claims in SDNY Bankruptcy Court" 11/14/2017; "ECF File adjournment letter and fax to Chambers courtesy copy" 3/8/2018; "Email copy of order and letter to bankruptcy counsel; ECF file both" 4/10/2019; "Review docket and motion to compel; draft and ECF file status letter" and "ECF file status letter re: discovery download and email same to opposing counsel" 5/20/2019; "File letter and extension request" 9/13/2019; "Prepare and file certificate of service on defendants" 9/17/2019; "Finalize for filing and file default motion and all related documents" 11/21/2019).

[14] *See, e.g.,* Dkt. No. 80-9 at 3–11, 13–14 ("Call and email with Emiliano re: schedules images" 9/23/2016; emails and calls with Emiliano regarding case status

Marquez, Rodriguez, and Pechman billed a total of 9.5 hours in entries marked "0.10 hours." Dkt. No. 80-9 at 3–14. As other courts have noted, where an attorney repeatedly bills 0.10 hours for "discrete task[s]," but, when taken together, it appears likely those tasks "occupied less than the sum total of the 0.10 hour increments, such a practice can improperly inflate the number of hours billed beyond what is appropriate." *Hernandez*, 2019 WL 3765750, at *6 (quoting *C.D. v. Minisink Valley Cent. Sch. Dist.*, No. 17-CV-7632 (PAE), 2018 WL 3769972, at *8 (S.D.N.Y. Aug. 9, 2018)) (quotation marks omitted).

Additionally, while it is true that this case has a somewhat longer history than similar wage-and-hour cases decided by default judgment, the length of time that the case has been pending does not necessarily reflect the amount of work called for, as it was stayed for more than a year and half during the pendency of 203 Lena's bankruptcy case. *See* Dkt. No. 44. During this time (between September 7, 2017 and May 16, 2019), Plaintiffs' counsel had very few tasks; they appear to have engaged in some settlement discussions with Defendants and conversations with their clients, filed a notice of claim in bankruptcy court, and requested

---

and scheduling on 10/21/2016, 10/26/2016, 11/3/2016, 11/11/2016, 1/9/2017, 1/17/2017, 3/1/2017, 3/21/2017, 4/13/2017; "Review offer from accountant" 5/17/2017; calls, emails, and text messages discussing conveying settlement offers 5/30/2017, 6/1/2017, 6/23/2017, 9/7/2017, 9/29/2017, 8/7/2018, 4/24/2019, 7/8/2019, 8/6/2019; "Fax courtesy copy to Chambers' email copy of Motion to Adjourn Defendants" 8/3/2017; "TC with Morrison and Pechman – no update" 11/10/2017; "Review and download certificate of default" 8/19/2019; "Review briefing schedule issued for default judgment motion with Pechman" 8/20/2019; "Download and review court order extending time to file motion. Save and update calendar re: same" 9/13/2019; "Call to Emiliano and leave message re: appointment and affidavit" 10/3/2019).

adjournments of conferences.  *See* Dkt. No. 80-9 at 9–10.  Overall, the scope of

representation for Plaintiffs' counsel included two court appearances, *see* Docket

Entries dated February 7, 2017 and January 3, 2020, and the filing of the following:

complaint; amended complaint; letter-motion to compel; requests for adjournments

of conferences; status reports; proposed clerk's certificate of default and order to

show cause for default judgment, including a memorandum of law and other

evidence; further submissions as part of the inquest; and opposition to Oleaga's

motion to vacate default judgment.  *See* Dkt. Nos. 1, 27, 36, 46, 49, 51, 56, 59, 62,

65, 70, 72, 75, 78–82, 89, 94.

At the same time, the case was decided without any discovery, and the only

factual disputes involved how many hours each of the four Plaintiffs worked.

Therefore, while it is understandable that counsel expended more hours on this case

than a typical wage-and-hour case resolved by default judgment, the reported hours

are still excessive.  Accordingly, the Court recommends a 30% reduction in

Pechman, Marquez, and Rodriguez's hours, which results in a total of 89.34 hours,

still very much on the high end for cases in this posture.  *See, e.g., Lora v. Grill on

2nd LLC,* No. 18-CV-4949 (JMF), 2018 WL 5113953, at *2 (S.D.N.Y. Oct. 19, 2018)

("In light of the seeming lack of complexity of the legal and procedural issues at play

and counsel's time and labor, the Court finds that the fee request should be reduced

by 50%."); *see also, e.g., Dacas v. Duhaney,* No. 17-CV-3568 (EK) (SMG), 2020 WL

4587343, at *5 (E.D.N.Y. June 18, 2020) (30% reduction in hours), *adopted by* 2020

WL 4586371 (Aug. 10, 2020); *Dominguez v. 322 Rest. Corp.,* No. 14-CV-3643 (RA),

35

2019 WL 2053995, at *3 (S.D.N.Y. May 9, 2019) (same).  The Court's

recommendations for the award of attorneys' fees are summarized in the table

below:

**Table 8: Attorneys' Fees Calculations**

| Name | Hourly Rate | Hours | Fee |
|------|-------------|-------|-----|
| Pechman | $500 | 5.6 (8 less 30%) | $2,800.00 |
| Marquez | $300 | 33.53 (47.9 less 30%) | $10,059.00 |
| Rodriguez | $250 | 35.21 (50.3 less 30%) | $8,802.50 |
| Paralegals | $100 | 15 | $1,500.00 |
| **Total** | | 89.34 | **$23,161.50** |

9.     **Costs**

An employee who prevails in a wage-and-hour action is entitled to recover

costs in addition to other damage awards.  NYLL § 663(1).  "As with attorneys' fees,

[a] requesting party must substantiate the request for costs."  *Guo v. Tommy's*

*Sushi, Inc.,* No. 14-CV-3964 (PAE), 2016 WL 452319, at *3 (S.D.N.Y. Feb. 5, 2016);

*see also, e.g., Euceda v. Preesha Operating Corp.,* No. 14-CV-3143 (ADS) (SIL), 2017

WL 3084490, at *4 (E.D.N.Y. June 30, 2017) ("In the absence of adequate

substantiation, a party is not entitled to recover costs. . . . Plaintiff has failed to

provide any substantiation, such as invoices or receipts, documenting the costs he

now seeks to recover."), *adopted by* 2017 WL 3084408 (E.D.N.Y. July 18, 2017).

Here, Plaintiffs seek costs in the amount of $533.00: $400 for the court filing

fee and $153 for the service of summons and complaint on Defendants ($51 per

Defendant).  Dkt. Nos. 80 ¶ 64; 80-9 at 14.[15]  The Court takes judicial notice of the

---

[15] As noted, Plaintiffs mistakenly seek $533 instead of $553.

$400 filing fee.  *Soto*, 2018 WL 4844018, at *9.  However, counsel has not submitted underlying documentation for the process server fees, apart from the billing sheet generated by the Pechman Law Group.  Other courts have found similar documentation to be inadequate.  *See, e.g., Pastor,* 2017 WL 5625556, at *9 (award of process server costs denied where counsel provided only "its own billing sheet" as documentation) (internal alterations omitted) (quoting *Almanzar,* 2016 WL 8650464, at *19).  The Court does not recommend the award of costs without proper documentation.  Thus, the award of costs should be limited to $400.

### III.    CONCLUSION

For the foregoing reasons, I recommend that Plaintiffs be awarded the following amounts: Salazar should be awarded $67,163.24 in damages, Hernandez should be awarded $38,917.56 in damages, Emiliano should be awarded $11,541.42 in damages, and Pichardo should be awarded $7,614.00 in damages, along with pre-judgment interest as set forth herein.  I also recommend that Plaintiffs be awarded attorneys' fees and costs in the amount of $23,561.50 and post-judgment interest on all sums.

### PROCEDURE FOR FILING OBJECTIONS
### TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Vincent L. Briccetti and to the

chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Briccetti.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated:  September 18, 2020
            New York, New York


_____
JAMES L. COTT
United States Magistrate Judge

38